Diana L. VISTEIN, Plaintiff,

v.

The AMERICAN REGISTRY OF
RADIOLOGIC TECHNOLO-
GISTS, Defendant.

No. 05 CV 2441.

United States District Court,
N.D. Ohio,
Eastern Division.

Sept. 13, 2007.

Andrew P. Lycans, J. Douglas Drushal, Robert C. Gorman, Critchfield, Critchfield & Johnston, Wooster, OH, for Plaintiff.

Jeffrey R. Hartwig, Jennifer Lesny Fleming, Thompson Hine, Cleveland, OH, Kimberly Fuhrman, James K. Langdon, Shari L. Jerde, Dorsey & Whitney, Minneapolis, MN, for Defendant.

*ORDER ADOPTING THE REPORT AND RECOMMENDATION GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND, DENYING PLAINTIFF'S REQUESTS FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF*

LESLEY WELLS, District Judge.

Plaintiff Diana Vistein ("Ms.Vistein") filed the complaint in this action on 12 September 2005 in Ashland County Court of Common Pleas. (Docket No. 1). The case was removed to this Court on 21 November 2005, pursuant 28 U.S.C. § 1331. (Docket No. 11). Ms. Vistein alleges the defendant, the American Registry of Radiologic Technologists ("the ARRT"), (1) violated her due process rights under the United States Constitution and under the Ohio Constitution, and (2) tortiuously interfered with her contractual and/or business relationships, when the defendant revoked her certification with the American Registry of Radiologic Technologists. (Docket No. 1).

On 17 March 2006 this Court granted ARRT leave to file the following counterclaims: (1) Federal Trademark Infringement under Sections 32(1)(a) and 43(a) of the Lanham Act, (2) Common Law Trademark Infringement, (3) Federal Dilution under Section 43 of the Lanham Act, (4) Federal Unfair Competition under Section 43 of the Lanham Act, (5) Common Law Unfair competition, (6) violation of the Ohio Deceptive Trade Practices Act, (7) Indemnification, and (8) Breach of contract. (See Docket No. 21, Ex. 2). ARRT bases its claims on the allegation that Ms. Vistein made improper use of the defendant's mark in securing and maintaining employment as a radiologic technologist. *Id.*

On 24 October 2006 ARRT filed a motion for summary judgment (Docket No. 55). Ms. Vistein filed a motion for summary judgment on 22 November 2006. Both parties briefed timely responses and replies. On 10 January 2007, this matter was referred to United States Magistrate Judge Kenneth S. McHargh for Report and Recommendation ("R & R"). The Magistrate Judge's R & R advises ARRT's motion for summary judgment be granted against all of Ms. Vistein's claims but for the application of the ARRT's breach of contract and indemnification counterclaim to the plaintiff's tortious interference claim. The R & R further advises Ms. Vistein's motion for summary judgment be denied against all of the ARRT's counterclaims but for the application of the ARRT's breach of contract and indemnification counterclaim to the plaintiff's tortious interference claim. (Docket No. 67 (hereinafter "R & R")). Ms. Vistein filed timely objections to the R & R on 26 March 2007. (Docket No. 68). ARRT responded on 12 April 2007. (Docket No. 69). This matter is now ripe for consideration.

## I. Background

Defendant ARRT is a national credentialing and registry of radiologic technologists. (Docket No. 55, Kraker Affidavit. ¶ 2 (hereinafter "Kraker Aff.")). Formed in 1922 as the American Registry of X–Ray Technicians, the ARRT adopted the name it has today in 1962. *Id.* Among the ARRT's functions are promotion of education and competence in the profession of radiologic technology through continuing education. (Docket No. 55, Kraker Aff. Ex. A). The ARRT also encourages and monitors the ethical practice of Registered Technologists through the publication and

enforcement of the profession's Code of Ethics. *Id.* ARRT provides "its registrants with a certificate and credential card stating the technologist has satisfied the ARRT's educational, testing, and other requirements." (Kraker Aff. ¶ 7). Furthermore ARRT grants its registrants "the right to state on resumes, job applications and other documents that they have satisfied the ARRT's requirements and are registered with the ARRT." (Kraker Aff. ¶ 7).

Ms. Vistein is a radiologic technologist, who was registered and certified with the ARRT almost continually from 1968 to 2003. (Docket No. 58, Vistein Deposition (hereinafter "Vistein Dep") pp. 35–36; Kraker Aff. ¶¶ 9–14). In June 2003, Ms. Vistein allowed her registration with the ARRT to lapse after she allegedly failed to submit her renewal application. (Kraker Aff. ¶¶ 9–10, 14). At some time after her registration lapsed and before June 2004, Ms. Vistein altered the date on her ARRT card, changing "2003" to "2004." (Vistein Dep. p. 171). Ms. Vistein explained the alteration occurred because she wished to make "a clerk of [hers] an honorary tech." *Id.* at 170–174. Apparently Ms. Vistein was arranging a mock ceremony in which she would present her clerk with the ARRT card. *Id.* She limited the alteration of the card to the date, however, realizing that doing more "just wasn't right." *Id.* at 174.

In June 2004, Ms. Vistein submitted her ARRT card to the Ohio Department of Health ("ODH") to demonstrate she had fulfilled the necessary continuing education requirements. (Vistein Dep. pp. 40, 100–101). Noting the date on the card had been altered, ODH contacted the ARRT to verify Ms. Vistein's registration status. (Kraker Aff. ¶ 15). The ARRT informed ODH that Ms. Vistein's registration had lapsed and that the card she had submitted was not valid. *Id.*

On 29 June 2004 the ARRT sent Ms. Vistein a cease-and-desist letter informing her that her conduct was unlawful and could subject her to civil damages as well as criminal prosecution. (Kraker Aff. ¶ 19). ARRT also informed Ms. Vistein the ARRT Ethics Committee would be reviewing her conduct at its next meeting. *Id.* The ARRT requested Vistein submit an explanation of her conduct within thirty days of the cease and desist letter. (Kraker Aff. ¶ 19). Ms. Vistein offered an explanation dated 12 July 2004. (Kraker Aff. ¶ 24).

At the time, Ms. Vistein was employed by the Cleveland Clinic Foundation ("CCF") as Department Manager in the Department of Radiology. (Docket No. 58, Vistein Dep. pp. 36–38). In order to maintain her position, her employer required she be registered with the ARRT. *Id.* at 36–38; 47. After receiving the cease-and-desist letter from the ARRT, Ms. Vistein informed the CCF she was no longer registered with the ARRT. *Id.* at 47. Her employer offered her the choice of taking an unpaid leave until the matter was resolved. *Id.* 47–48. Ms. Vistein instead chose to resign. *Id.* at 53. Prior to Ms. Vistein's receipt of the cease-and-desist letter, she was in contact with a recruiter at Samaritan Regional Health System. *Id.* at 57–61. She interviewed with Samaritan and informed the interviewer that she was resolving some credentialing issues. *Id.* at 61. Ms. Vistein was offered a position with Samaritan as Director of Radiology, which she accepted. *Id.* at 72–73. It was Ms. Vistein's understanding that the position at Samaritan did not require her to be registered with the ARRT. *Id.* at 69.

At its November meeting the ARRT Ethics Committee concluded Ms. Vistein

had violated the ARRT Standards of Ethics when she submitted an altered ARRT card to the ODH. (Docket No. 55, Ex. 22). On 19 November 2004 the Ethics Committee sent Ms. Vistein a letter explaining that conclusion. *Id.* The letter also informed Ms. Vistein the ARRT Ethics Committee was recommending revocation of her ARRT certification. *Id.* Ms. Vistein was allowed to request a hearing within thirty days from the date the letter was mailed. *Id.* Ms. Vistein claims that she never received this letter (Docket No. 58, Vistein Dep. p. 132), but admits she was aware that an investigation was underway and that a decision was imminent. *Id.* at 121–122, 132, 155–156. Ms. Vistein did not attempt to discover the outcome of the ARRT Ethics Committee meeting, nor did she request a hearing. *Id.* at 133–137.

In April 2005, in its annual report the ARRT published its finding that Ms. Vistein had been ethically sanctioned by the Ethics Committee. (Docket No. 1, Att. # 1, ¶ 47; Kraker Aff. ¶¶ 20–22). On 18 April 2005, Samaritan contacted the ARRT regarding Ms. Vistein's ethical sanctions. (Kraker Aff. ¶¶ 29–30). Because Ms. Vistein was unable to get the sanction lifted, Samaritan terminated her employment on 15 September 2005. (Vistein Dep. 162–164).

Subsequently, Ms. Vistein brought suit against the ARRT alleging (1) violation of due process pursuant to 42 U.S.C. § 1983 and the Ohio Constitution, and (2) intentional interference with her contractual and/or business relationships. (Docket No. 1)

## II. Defendant's motion for summary judgment

In its motion for summary judgment, the ARRT argues (1) Ms. Vistein's claims of violation of due process and tortious interference are barred because she contractually waived and released those claims, (2) the ARRT is statutorily immune from liability pursuant to O.R.C. § 2301.251, and, (3) Ms. Vistein's claims of violation of due process and tortious interference with a business contract fail on their merits.

In her reply, Ms. Vistein contends the waiver and release upon which the ARRT relies is an unconscionable contract of adhesion. Therefore, because the contract is unenforceable, she maintains her claims are not barred. Further, Ms. Vistein argues the statutory immunity claimed by the ARRT under O.R.C. § 2301.251 is inapplicable, making her recovery permissible. Lastly, she argues that both her claims succeed on their merits.

## III. Magistrate Judge McHargh's Report and Recommendation

Magistrate Judge McHargh recommends the waiver of liability upon which the ARRT relies does constitute a valid and enforceable agreement with respect to Ms. Vistein's due process claims. (Docket No. 67, pp. 8–13). The R & R advises that the contract was not unconscionable because Ms. Vistein has not demonstrated both procedural and substantive unconscionability. *Id.* The Magistrate Judge also recommends the agreement does not bar Ms. Vistein from asserting intentional tortious interference, because a party cannot contractually limit its liability for intentional acts. *Id.* at 13.

The R & R advises that O.R.C. § 2305.251 is applicable to the ARRT and precludes Ms. Vistein from recovering damages for her due process and intentional tortious interference claims. (R & R pp. 13–17). However, the R & R recommends the immunity it provides extends only to the plaintiff's claims for damages. *Id.* at 14. Therefore, the R & R recommends Ms. Vistein's claims for injunctive

and declaratory relief are not precluded under O.R.C. § 2305.251. *Id.* The R & R thoroughly reviews the merits of the plaintiff's due process and intentional tortious interference claims and recommends disposing of them on the merits. (R & R, pp. 17–21 & 21–26).

Under Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1)(C), this Court reviews *de novo* those portions of the Magistrate Judge's R & R to which specific objections are made. Upon review, this Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). For the reasons set forth below this Court will adopt the reasoning of the R & R, granting in part and denying in part defendant's motion for summary judgment, and granting in part and denying in part plaintiff's motion for summary judgment.

## IV. Standard of Review

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir.1991) (moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmov-

ing party, do not raise a genuine issue of material fact for trial") (*quoting Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir. 1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted).

In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

## V. Law and Analysis

In objecting to the R & R, Ms. Vistein maintains the Magistrate Judge: (1) improperly construed facts against her, the non-moving party; (2) erroneously recommended the waiver and release was binding and enforceable by improperly applying the factors to determine procedural unconscionability; (3) erroneously recommended the ARRT is statutorily immune from liability for money damages; (4) improperly determined the state played no role in the ARRT's internal investigation; and, (5) erred in recommending Ms. Vistein's intentional tortious interference claim lacked merit when advising that Ms. Vistein failed to demonstrate an issue of fact with respect to the actual malice of the ARRT. (Docket No. 68).

The Court will address each of Ms. Vistein's objections in turn.

### A. Objection: Improperly Construing Facts Against the Non–Movant.

Ms. Vistein first asserts the R & R improperly construes facts against her, the nonmoving party. (Docket No. 68, p. 1). Specifically, Ms. Vistein objects to the recitation in the R & R that she did not submit her application to ARRT. *Id.* Instead, Ms. Vistein claims she did submit her application, but the ARRT failed to process it. *Id.* She further objects to the R & R's observation that she offered conflicting explanations as to why she altered her ARRT membership card. *Id.* Ms. Vistein claims her explanations were not conflicting, and asserts that, contrary to the R & R's characterization, "clerical employee" and "front desk secretary" refer to the same person. *Id.*

Ms. Vistein is correct that when deciding on a motion for summary judgment, the Court must construe the evidence and all inferences to be drawn from it in the light most favorable to the non-moving party. *See Blakeman v. Mead Containers,* 779 F.2d 1146, 1150 (6th Cir.1985). However, summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Fed. R.Civ.P. 56(c). The fact distinctions Ms. Vistein raises are neither genuine nor material.

Even assuming, for the sake of argument, there exists a genuine issue with respect to the facts Ms. Vistein cites, she fails to explain how those facts are material to the disposition of the issues now before the Court. Ms. Vistein received a cease-and-desist letter from the ARRT after she submitted an expired, but altered to look unexpired, registration card to the ODH. Whether prior to that point in time Ms. Vistein submitted her application to the ARRT has no bearing on the legal contours animating the Court's decision. The same holds true for her explanations as to why she altered her membership card. Accordingly, this Court determines Ms. Vistein's first objection has no merit.

### B. Objection: Contractual Limitation of Liability

 In its motion for summary judgment, the ARRT argues against Ms. Vi-

stein's claims of due process and tortious interference as contractually waived and released by the agreement. (Docket No. 55, att. 1, pp. 5–7). Further, the ARRT cites contractual language in the agreement which requires Ms. Vistein to "indemnify and hold harmless, the ARRT . . . from, against, and with respect to any and all claims, losses, costs, expenses, damages, and judgments (including reasonable attorney fees) arising from her pursuit of this litigation." *Id.* at 5. Ms. Vistein maintains the agreement is an unconscionable contract of adhesion which is, accordingly, non-binding. (Docket No. 56 pp. 5–9).

The R & R advises that because Ms. Vistein had not demonstrated both procedural and substantive unconscionability, the agreement does constitute a valid and enforceable waiver with respect to Ms. Vistein's due process claims. (Docket No. 67, pp. 8–13). However, the R & R also recommends that the agreement does not bar Ms. Vistein from asserting intentional tortious interference, because a party cannot contractually limit its liability for intentional acts. *Id.* at 13.

Ms. Vistein objects to the R & R's determination that the contract was not unconscionable. Specifically, Ms. Vistein questions the application of the factors to determine procedurally unconscionability. (Docket No. 68, p. 2). Ms. Vistein asserts that "ARRT enjoyed the superior bargaining position, the terms were not explained [to her,] and [she] was not represented by counsel." She further maintains these facts provide sufficient basis for a finding of procedural unconscionability, or at least raise a genuine issue of material fact.

Ohio law characterizes unconscionability as an "absence of meaningful choice on the part of one of the parties to the contract, combined with contract terms that are unreasonably favorable to the other party." *Collins v. Click Camera &*

*Video, Inc.* 86 Ohio App.3d 826, 832, 621 N.E.2d 1294 (Ohio Ct.App.1993). Thus, to prove unconscionability the plaintiff must show two things: (1) individualized circumstances surrounding each of the parties to a contract such that no voluntary meeting of the minds was possible, i.e., "procedural unconscionability," and (2) unfair and unreasonable contract terms, i.e., "substantive unconscionability." *Id.* at 834, 621 N.E.2d 1294. To show unconscionability the plaintiff must satisfy both elements of the two part test. *Id.* at 834, 621 N.E.2d 1294.

The crucial question with respect to procedural unconscionability is whether "each party to the contract, considering his obvious education or lack of it, [had] a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print." *Lake Ridge Academy v. Carney* 66 Ohio St.3d 376, 613 N.E.2d 183 (Ohio 1993) (*quoting Williams v. Walker–Thomas Furniture Co.* 350 F.2d 445, 449 (C.A.D.C. 1965)). "Procedural unconscionability involves those factors bearing on the relative bargaining position of the contracting parties, e.g., 'age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, whether there were alternative sources of supply for the goods in question.' " *Collins,* 86 Ohio App.3d at 834, 621 N.E.2d 1294 (*quoting Johnson v. Mobil Oil Corp.* 415 F.Supp. 264, 268 (E.D.Mich.1976)).

Ms. Vistein has not established a basis for procedural unconscionability. As reported in the R & R, Ms. Vistein is educated and experienced; she makes no claims she failed to read or understand the waiver; she had signed the same renewal form and waiver for the previous nine years.

Over the years she has had opportunity to consult with counsel as to the import of the limitation of the liability clause, and while Ms. Vistein was not represented by counsel at the time the contract was executed, this is not dispositive. *See, e.g., Ball v. Ohio State Home Servs., Inc.,* 168 Ohio App.3d 622, 627, 861 N.E.2d 553 (2006). Accordingly, this Court finds Ms. Vistein had "a reasonable opportunity to understand the terms of the contract." As such, Ms. Vistein has not, as she must, established the existence of procedural unconscionability.

Furthermore, the R & R recommends this Court find the waiver and release form not substantively unconscionable. Ms. Vistein has offered no objections to this recommendation. Because both elements are necessary for a finding of unconscionability, Ms. Vistein's objection lacks merit.

■ Therefore, as this Court finds the waiver and release binding and enforceable, Ms. Vistein is barred from asserting her due process claims. She is, accordingly, required to indemnify the ARRT with respect to its losses, costs, expenses, damages, judgments, and attorneys' fees incurred in asserting her due process claim. Because the waiver and release does not bar intentional torts, Ms. Vistein is not required to indemnify the ARRT for losses, costs, expenses, damages, judgments, and attorneys' fees arising from her claim of tortious interference with a business relationship. Furthermore, pursuant to the contract language, Ms. Vistein is not required to indemnify the ARRT for losses, costs, expenses, damages, judgments, and attorneys' fees arising from the defendant's counterclaims.

### C. Objection: Statutory Immunity Under O.R.C. § 2305.251

■ In its motion for summary judgment, the ARRT maintains it is statutorily immune from Ms. Vistein's claims under O.R.C. § 2305.251, which provides that "no health care entity shall be liable in damages to any person for any acts, omissions, decision, or other conduct within the scope of the functions of a peer review committee of the health care entity." The ARRT argues it qualifies as a "health care entity" and it should be immune from liability for the actions carried out through its ethics committee.

The Magistrate Judge found O.R.C. § 2305.251 applicable to the ARRT. (R & R pp. 13–17). However, the immunity it provides extends only to the plaintiff's claims for damages. *Id.* at 14. Therefore the R & R recommends that Ms. Vistein's claims for injunctive and declaratory relief are not precluded under O.R.C. § 2305.251. *Id.*

■ Ms. Vistein offers no new arguments in her objections to the Magistrate Judge's recommendation that the ARRT's liability for money damages is statutorily limited under O.R.C. § 2305.251. Because this Court does not abuse its discretion when adopting an R & R when a party fails to raise any new arguments in its objections, *see Brumley v. Wingard,* 269 F.3d 629, 647 (6th Cir.2001), this Court, finding the reasoning of the R & R sound, adopts the R & R with respect to the ARRT's statutory immunity under O.R.C. § 2305.251.

■ However, the ARRT's immunity under O.R.C. § 2305.251 may be defeated by a showing of actual malice. *See Jacobs v. Frank,* 60 Ohio St.3d 111, 113, 573 N.E.2d 609 (Ohio 1991); *Wall v. Ohio Permanente Med. Group, et al.,* 119 Ohio App.3d 654, 666, 695 N.E.2d 1233 (1997). In her objections, Ms. Vistein urges the Court to find a genuine issue of material fact as to whether the ARRT acted with

actual malice when it reported her ethical violations to the CCF and Samaritan. (Docket No. 68, pp. 3–4). Ms. Vistein argues the ARRT's Ethics Committee's failure to consider her motives when she altered the date on her ARRT card demonstrates it acted with reckless disregard for the truth when it reported her ethical sanctions. *Id.*

■■■ "Actual malice in this context requires proof that the defendant[ ] made statements in connection with a peer review process with knowledge they were false or with reckless disregard for whether they were true or false." *Wall,* 119 Ohio App.3d at 666, 695 N.E.2d 1233 (*citing Jacobs v. Frank,* 60 Ohio St.3d 111, 114–115, 573 N.E.2d 609 (Ohio 1991)). "[T]he party seeking relief must present evidence that the defendant[ ] knew the statements were false, entertained serious doubts about whether they were false, or disregarded a high probability that they were false." *Id.*

Ms. Vistein has not supplied evidence that satisfies the standard established in *Wall.* The ARRT's purported failure to investigate Ms. Vistein's motives in altering her card does not demonstrate the defendant's knowledge of falsity or reckless disregard for the truth. The inquiry conducted by the ARRT Ethics Committee does not require a consideration of motive. (Docket No. 55, Ex 14, pp. 2–3). The ARRT's Rules of Ethics recommends sanctions when a registrant "engag[es] in any unethical conduct, including, but not limited to, conduct likely to deceive, defraud, or harm the public," or where the registrant,

> engag[es] in false, fraudulent, deceptive or misleading communications to any person regarding the individual's education, training, credentials, experience, or qualifications, or the status of the individual's state permit, license or registration certificate in radiologic technol-

ogy or certificate of registration with ARRT.

*Id.* at 3.

Ms. Vistein's alteration of her ARRT card falls squarely into prohibited conduct outlined in the ARRT Rules of Ethics, and her motivation in making the alteration is not a consideration within the rules. Ms. Vistein admits she was aware of the ARRT's ethical rules. (Docket No. 58, Vistein Dep. 217–218). Moreover, her failure to arrange a hearing to address her conduct, which she was allowed to do, tends to show the ARRT Ethics Committee had no reason to believe the report on her behavior was false.

Ms. Vistein has not demonstrated the ARRT acted with knowledge of falsity or reckless disregard for the truth with respect to reporting on her ethical violations. As she has failed to demonstrate actual malice, the ARRT's statutory immunity under O.R.C. § 2305.251 remains intact. This Court finds no merit in the plaintiff's objection.

## D. Objection: The ARRT Engaged in *De Facto* State Action.

■■■ Ms. Vistein takes issue with the R & R's conclusion that the state played no role in the ARRT's internal investigation into her allegedly ethically improper conduct. Even if, as the plaintiff asserts in her objections to the R & R, "the State initiated [AART's] investigation [of Ms. Vistein] through its phone call, was the primary 'witness' relied on by the AART, and took concurrent action to deny Vistein a state license based upon AART's ... investigation," Ms. Vistein's 42 U.S.C. § 1983 claim on the merits still fails as a matter of law. (Doc. 68, p. 3).

As noted in the R & R, a § 1983 claim can only succeed on the merits if the plaintiff can prove a "deprivation of a right

secured by the Constitution," and "the deprivation was caused by a person acting under color of state law." (R & R, p. 18) (quoting *Wittstock v. Mark A. Van Sile Inc.*, 330 F.3d 899, 902 (6th Cir.2003)). Here, the uncontested record indicates the AART is a private, non-profit credentialing agency. Nonetheless, as detailed in the R & R, the United States Supreme Court has determined that a private actor's actions may be attributable to the state if one of the three following tests is met: (1) the public function test; (2) the state compulsion test; or (3) the symbiotic relationship or nexus test. (R & R, p. 19).

As further discussed in the R & R, the ARRT's investigation into Ms. Vistein's altered membership card does not pass the public function test for *de facto* state action by a private actor. (R & R, pp. 19–20). Such functions are those "traditionally exclusively reserved to the state, such as holding elections ... or eminent domain." *Wolotsky*, 960 F.2d at 1335. The ARRT is a private, national credentialing agency for radiological technicians and thereby does not perform functions "traditionally exclusively reserved to the state." *See Talwar v. Catholic Healthcare Partners, et al.*, No. 05–7437, 2006 WL 3526792, 2006 U.S. Dist. LEXIS 88280 (N.D.Ohio 2006) (a private entity's investigation into an individual's medical practice does not count as a traditionally exclusive state function); *McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 525 (3rd Cir.1994) (evaluation and accreditation of medical education is not a traditionally exclusive state function).

Neither do the ARRT's actions meet the state compulsion test. Here, the state must "exercise such coercive power or provide such significant encouragement [to the private actor] that in law the choice of the private actor is deemed to be that of

the state." *Wolotsky* 960 F.2d at 1335. Nothing in the record indicates that the state either coerced or significantly encouraged the ARRT's investigation of Ms. Vistein.

Ms Vistein's claims also fail the nexus test. To pass this test, the United States Supreme Court has held

> [t]he State [must have] so far insinuated itself into a position of interdependence with [the private actor] that it must be recognized as a joint participant in the challenged activity, which, on that account, cannot be considered to have been so "purely private" as to fall without the scope of the Fourteenth Amendment.

*Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). Here, as Ms. Vistein observes, there is relatively frequent communication between the ARRT and the ODH. The ARRT and the ODH are in telephonic contact on a weekly basis, the ODH uses the ARRT credentialing test to determine radiologic licensing eligibility, and the ARRT informs ODH about members under sanction for ethics violations.

However, nothing in the record demonstrates that ODH has "so insinuated itself" into ARRT's governance and operations as to allow this Court to consider ODH a "joint participant" in the ARRT's investigation into Ms. Vistein's allegedly ethically improper conduct. Ms. Vistein has presented no evidence that the ODH had control over the ARRT's board of directors, its bylaws or rules, funding for the ARRT, or directed, or even encouraged, the ARRT's investigation into Ms. Vistein.

Accordingly, Ms. Vistein does not demonstrate that the ARRT should count as a state actor, thus her § 1983 claim fails.

### E. Objection: The ARRT Exercised Actual Malice.

■ The existence of actual malice is essential to Ms. Vistein's claim for intentional tortious interference with business relations. In her objection to the R & R, Ms. Vistein argues there is a genuine issue of material fact as to whether the ARRT behaved with actual malice when it communicated to Samaritan its findings concerning her alleged ethical misconduct.

The plaintiff's claims notwithstanding, nothing in the record indicates "the [ARRT's] obvious goal was to make Vistein's conduct seem worse than it actually was." (Doc. 68, p. 5). As noted in the R & R, "the evidence demonstrates that the communications made by the ARRT to Samaritan were made to an interested entity at that entity's request and were limited in scope to Samaritan's inquiry." (R & R, p. 26).

■ As already discussed in connection with Ms. Vistein's challenge to the ARRT's statutory immunity claim, to show actual malice the plaintiff must satisfy a demanding standard. See Wall, 119 Ohio App.3d at 666, 695 N.E.2d 1233. Under Ohio law, "when a defendant possesses a qualified privilege regarding statements contained in a published communication, that privilege can be defeated only by a clear and convincing showing that the communication was made with actual malice." Jacobs v. Frank, 60 Ohio St.3d 111, 116, 573 N.E.2d 609 (Ohio 1991). Here, and as already noted, Ms. Vistein does not produce clear and convincing evidence that the ARRT's communications with Samaritan were undertaken with actual malice. As such, Ms. Vistein's intentional tortious interference claim cannot survive summary judgment.

### VI. Ms. Vistein's Claims for Declaratory Judgment and Injunctive Relief.

■ In light of the disposition of the plaintiff's claims through summary judgment, the Court reviews, *sua sponte*, Ms. Vistein's request for a declaratory judgment and for injunctive relief. (Counts I & V). Specifically, Ms. Vistein urges this Court to declare her a "Registered Technologist" entitled to display any certificate issued by the ARRT because she allegedly completed "all continuing education requirements necessary for continued certification by the ARRT," and she "returned a renewal application with the required twenty-dollar fee to the ARRT." (Complaint, ¶¶ 52–60). Further, Ms. Vistein asks the Court to enjoin ARRT's revocation action as taken without due process and as an act of tortious interference with the plaintiff's contracts. (Complaint, ¶¶ 86–91).

#### A. Declaratory Judgment

■ This Court has authority to grant declaratory relief pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201. The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. However, "[a] declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank*, 333 U.S. 426, 431, 68 S.Ct. 641, 92 L.Ed. 784 (1948).

■ The Sixth Circuit applies two principal criteria to determine whether a declaratory ruling is appropriate: "(1) when the judgment will serve a useful purpose in clarifying and settling the legal

relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Grand Trunk. W. Railroad Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir.1984). In addition, the Sixth Circuit considers the following factors in determining whether to grant declaratory relief:

(1) Whether the judgment would settle the controversy;

(2) Whether the declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(3) Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;";

(4) Whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5) Whether there is an alternative remedy that is better or more effective. *Id.*

However, this list of factors is not exhaustive, as "the Court must make a full inquiry into all relevant considerations." *Brotherhood*, 200 F.Supp.2d at 692. Ultimately, the dispositive inquiries are "whether the judgment 'will serve a useful purpose in clarifying and settling the legal relationships in issue' and whether it 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Id.* (*citing Aetna,* 74 F.3d at 687). If "neither of these results can be accomplished, the court should decline to render the declaration prayed." *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d at 326 (*quoting* E. Borchard, *Declaratory Judgments* 299 (2nd ed.1941)).

In this instance, where Ms. Vistein's registration was revoked for the submission of an altered ARRT card to the ODH, a declaratory judgment from this Court will neither clarify nor settle the legal relationships at issue. Whether Ms. Vistein completed her continuing education requirements or returned a renewal application with the required fee has no bearing on the issue at hand, namely, the ARRT's revocation action. Accordingly, this Court determines Ms. Vistein's request for declaratory judgment not cognizable.

## B. Injunctive Relief.

■■■ As the Sixth Circuit recognizes, with regard to a request for injunctive relief:

a district court must consider: "(1) the plaintiffs' likelihood of success on the merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of an injunction upon the public interest." "None of these factors, standing alone, is a prerequisite to relief; rather, the court should balance them." Thus, even though a finding of no likelihood of success "is usually fatal[,]" a district court should ordinarily analyze all of the factors.

*Abney v. Amgen, Inc.*, 443 F.3d 540, 546–47 (6th Cir.2006).

The foregoing analysis, and this Court's adoption of the R & R's thoroughly argued recommendations, make clear Ms. Vistein's claims of due process and tortious interference categorically fail on the merits. Consequently, this Court lacks a platform from which to impose injunctive relief in an instance, such as this, where there exists not merely little likelihood of success on the merits, but where the Court has already determined that the very grounds upon which the plaintiff seeks an injunction—violation of due process and tortious

interference with contracts—are meritless as a matter of law. Accordingly, this Court declares Ms. Vistein's request for injunctive relief moot.

## VII. DEFENDANT'S COUNTER-CLAIMS: LAW AND ANALYSIS

### A. Trademark Infringement

■ The ARRT brings counterclaims of Federal Trademark Infringement against Ms. Vistein, pursuant to Section 32(1)(a) (Count 1) and Section 43(a) (Count 2) of the Lanham Act. (Amended Answer and Counter Claim, Doc. 21, ¶¶ 134–142). Ms. Vistein has moved for summary judgment on those Counts. (Doc. 58). The R & R addresses Ms. Vistein's specific, statutory trademark contentions at length (Doc. 67, pp. 26–35) and denies the plaintiff's motion for summary judgment "with respect to the issues of fraudulent procurement of registration and cancellation" (p. 28) with respect to "whether Plaintiff's use of the ARRT's mark created a likelihood of confusion" (p. 32), with respect to whether the "ARRT was damaged by Plaintiff's use of its mark" (p. 34), and with respect whether the ARRT suffered trademark infringement under Section 43 of the Lanham Act (p. 35). As well, the R & R recommends denying Ms. Vistein's motion for summary judgment on the ARRT's common law trademark infringement claim (Count 3). (Doc. 67, p. 36).

In her objections to the R & R's position urging denial of her motion for summary judgment on the ARRT's trademark infringement claims Ms. Vistein contends the following: (1) the R & R erred in not finding the ARRT mark is subject to cancellation and erred in concluding the ARRT's mark is not used as a certification mark; (2) the R & R erred in finding the ARRT's mark satisfied the "use in commerce" requirement; (3) the R & R erred

in finding sufficient evidence to raise a genuine issue of material fact as to the likelihood of confusion; and, (4) the R & R erred in not granting Ms. Vistein summary judgment on the issue of damages attendant upon the alleged trademark infringement. (Doc. 68, pp. 4–7). This Court has reviewed the record, the law, and the arguments as they pertain to Ms. Vistein's objections and finds, for the reasons discussed below, the R & R is not in error. Accordingly the Court will adopt the R & R's position denying Ms. Vistein's motion for summary judgment on the ARRT's trademark infringement claims.

### 1. Objection: The ARRT Mark with Regard to Cancellation, Certification and Fraud.

To warrant cancellation of the AART's mark, Ms. Vistein must: (1) demonstrate the AART's mark is in fact a certification mark and not the collective membership mark granted by the Patent and Trademark Office ("PTO"); and, (2) show by clear and convincing evidence that the ARRT fraudulently registered with the PTO to procure a collective membership mark. *L.D. Kichler Co. v. Davoil, Inc.*, 192 F.3d 1349, 1352 (Fed.Cir.1999) (citing *Metro Traffic Control, Inc. v. Shadow Network, Inc.*, 104 F.3d 336, 340, 41 U.S.P.Q.2D (BNA) 1369, 1373 (Fed.Cir. 1997)).

In her objection to the R & R, the plaintiff maintains the ARRT's mark is a certification mark because the ARRT cards are "presented to [the ODH] to certify that continuing education requirements have been met or medical facilities to certify that applicants have met certain ethical standards." (Doc. 68, p. 5). The plaintiff then goes on to hypothetically contrast the ARRT with the American Bar Association ("ABA")—"a voluntary mem-

bership organization which [does] not certify[ ] anything to the states." *Id.*

Ms. Vistein misconstrues the nature of a certification mark. Such a mark is held out to the consumer of the goods or services in question

> to certify regional or other origin, material, mode of manufacture, quality, accuracy, or other characteristics of such person's goods or services or that the work or labor on the goods or services was performed by members of a union or other organization.

15 U.S.C. § 1127. *See also Trademark Protection and Practice,* § 1.02(3). Presumably, the consumers of radiologic services are patients and not the ODH or "medical facilities." The ODH regulates radiologic services and medical facilities sell such services; neither consumes them. As such and contra the plaintiff's claim, the Magistrate Judge's finding that the "ARRT registrants do not present their cards to patients to show that their services were performed by a member of the ARRT" buttresses the ARRT's position that its mark is not a certification mark. (R & R, p. 27). At most, membership in good standing in the ARRT is a sufficient condition for having met certain educational and ethical requirements, much as is membership in the ABA. The ODH and medical facilities can thus use such information as a shortcut to verifying a radiologist's educational and ethical background instead of conducting their own exhaustive inquiry.

Moreover, even if Ms. Vistein were to prevail on the first part of her argument for cancellation, she fails on the second. Specifically, nothing in the record clearly and convincingly indicates that the ARRT fraudulently procured its collective membership mark from the PTO. Hence, on the instant claim, this Court denies her motion for summary judgment.

### 2. Objection: Federal Trademark Infringement—Section 32(1)(a) of the Lanham Act—Use in Commerce, Likelihood of Confusion, and Injury.

Ms. Vistein moves this Court for summary judgment on the ARRT's trademark infringement claim under Section 32 of the Lanham Act. The plaintiff asserts: (1) she did not violate the "use in commerce" language of the Act, (2) the use of the altered card did not create the likelihood of confusion; and, (3) the ARRT failed to demonstrate injury. Reviewing each assertion, the Magistrate Judge's recommended denying Ms. Vistein's motion for summary judgment. The plaintiff has now raised objections to the R & R's recommendation as it pertains to its finding of "use in commerce," likelihood of confusion, and damages.

### a. "Use in Commerce"

Upon a review of the record and the parties responses to the R & R, this Court adopts the Magistrate Judge's finding of sufficient evidence from which a jury could conclude that Ms. Vistein's use of the ARRT's mark amounted to "use in commerce" under the Act. (Doc. 67).

Section 32 (1)(a) of the Lanham Act states:

> Any person who shall, without consent of the registrant—
> (a) Use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant . . .

15 U.S.C. § 1114(1)(a) (2006).

Ms. Vistein argues that presenting her altered card to the ODH did not constitute

"use in commerce" because she was not selling goods or services but was rather attempting to renew her state radiologic license. (R & R, p. 29). The facts in the instant case are similar to those in *Am. Registry of Radiologic Technologists v. Garza*. In *Garza*, the defendant used an altered ARRT card on a single occasion in an attempt to secure employment. The court found that he had violated the "use in commerce" clause under 15 U.S.C. § 1125, a provision under the Madrid Protocol.[1] U.S. Dist. LEXIS 29826 (S.D. Texas May 12, 2006). Likewise, here, Ms. Vistein submitted her altered ARRT card to the ODH on a single occasion in order to secure continued employment with the Cleveland Clinic. The record indicates that the plaintiff's use of her altered ARRT card was "connected to the distribution of Plaintiff's services as a radiologic technician." (R & R, p. 29).

The plaintiff's repeated reliance on *Lyon v. Quality Courts United, Inc.*, is misplaced. (Doc. 68). *Lyon* primarily addresses whether the Lanham Act provides a basis for federal subject matter jurisdiction independent of the diversity of the parties. *Lyon v. Quality Courts United, Inc.*, 249 F.2d 790, 794–95 (6th Cir.1957). Given the evidence in the record, a jury could find that Ms. Vistein's submission of an altered AART card did constitute "use in commerce" under § 32 of the Lanham Act. As such, on this issue, AART's counterclaim survives summary judgment.

### b. The Likelihood of Confusion

 As posed in the R & R: "[t]he question is whether relevant persons [the ODH] are likely to believe that the trademark owner's services emanate from or are associated with the collective organization." (Doc. 67, p. 30). Ms. Vistein sought summary judgment on the ARRT's infringement claim predicated on the argument that no confusion occurred when she presented her registration card to the ODH because, upon receipt of the altered card, ODH contacted the ARRT to confirm its suspicions that the card had been tampered with. Reviewing the record in light of the factors enunciated in *Frisch's Restaurants v. Elby's Big Boy*, the Magistrate Judge's report found the evidence of the likelihood of confusion persuasive enough to deny Ms. Vistein's motion for summary judgment. *Id.* pp. 30–32.[2]

In her opposition to the R & R, Ms. Vistein relies upon, as she did in her motion for summary judgment, the decision in *Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 423 F.3d 539 (6th Cir.2005). Ms. Vistein maintains *Gibson* is dispositive of her contention that no likelihood of confusion occurred in this instance. (Doc. 68, p. 6). *Gibson* is inapposite, however, as it is predicated on the trademark holder's conceding the absence of confusion at the point-of-sale. In this instance, the trademark holder, the ARRT, argues that a

---

1. Any person who, on or in connection with goods or services, ... *uses in commerce* any word, term, name, symbol, or device, ... or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-(A) is likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

 15 U.S.C. § 1125(a)(1) (emphasis added).

2. This Court reviewed the *Frisch* factors, their application to the matter at hand, as well as the R & R's treatment of the factors. Contrary to Ms. Vistein's hyperbolic brief in opposition, the R & R's treatment of the *Frisch* factors was correct, balanced, and exhibited fidelity to the extant jurisprudence.

strong potential for confusion remains. Here, all that is necessary to survive summary judgment is the potential for confusion. *See Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3rd Cir.1990) (holding that "proof of actual confusion is not necessary; likelihood is all that need be shown."); *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 284 (6th Cir. 1997) (recognizing that "plaintiff only must show a sufficient *potential* of confusion, not actual confusion") (emphasis original). This Court finds the ARRT has evidence from which a jury could reasonably conclude a potential for confusion. Accordingly, this Court adopts the R & R's recommendation to deny Ms. Vistein's motion for summary judgment on this issue.

### c. Damages

■ Finally, Ms. Vistein contends the ARRT's request for damages its infringement claim should be dismissed as a matter of law because the ARRT has failed to establish its damages. Construing the evidence in the light most favorable to nonmovant the ARRT, the Magistrate Judge found the ARRT had alleged sufficient facts from which a jury could conclude that the ARRT was damaged by Ms. Vistein's use of its mark. (Doc. 67, p. 34). The R & R, however, denied the ARRT claim for income earned by Ms. Vistein while she was unregistered (*Id.* at 33) and, further, recognized the brief window of time in which the ARRT might actually claim damages. As a result, the R & R recommended "[a]ny damages suffered b y ARRT as a result of Plaintiff's conduct flow directly from the alleged infringing incident and thus begin from the time Plaintiff presented her altered ARRT card to the ODH." *Id.* at 34. The record evidence shows the ARRT exercised control over its mark when Ms. Vistein stopped using her card after the ARRT ordered her to cease-and-desist. Any claim for damages occurred within that time-frame. Accordingly, this Court adopts the R & R's recommendation to deny Ms. Vistein's motion for summary judgment on ARRT's damages claim.

### B. Remaining Counterclaims

The R & R recommended denial of Ms. Vistein's motion for summary judgment with regard to the ARRT's claims of: (1) trademark infringement under Section 42(a) of the Lanham Act. (Doc. 67, pp. 34–35); (2) common law trademark infringement (Doc. 67, p. 36); and, (3) unfair competition and violation of Ohio's Deceptive Trade Practice Act (Doc. 67, pp. 36–38). Finally, in its brief, the ARRT sought a summary determination on its counterclaims for breach of contract and indemnification. The ARRT contends it was entitled to indemnification. The R & R denied the ARRT's motion for summary judgment on its claims for breach of contract and indemnification as these claims applied to the plaintiff's intentional tortious interference with contractual and business relationships claim. However, the R & R recommended granting the ARRT motion for summary judgment as it applies the defendant's breach of contract and indemnification counterclaims sounding in due process. (Doc. 67, p. 13). Mirroring this recommendation, the R & R found Ms. Vistein entitled to summary judgment on the ARRT's counterclaim only with regard to her pursuit of her claim for intentional tortious interference with contractual and business relationships.

Put differently, the R & R recommends, with regard to the ARRT's breach of contract and indemnification claims, that the agreement innoculates ARRT against Ms. Vistein's due process claims and holds her responsible for indemnifying the ARRT's losses, expenses, costs, damages and judg-

ments, including reasonable attorneys' fees, arising from her pursuit of her claims in this instance. However, Ms. Vistein is not required to indemnify the ARRT with respect to any losses, costs, damages, judgments, expenses or attorneys' fees arising from her claim of intentional tortious interference with contract. That part of the defendant's counterclaim is therefore dismissed. Moreover, this Court adopts the R & R's reading of the limit of the agreement, which does not require Ms. Vistein to indemnify the ARRT with respect to any expenses incurred in their pursuit of their counterclaims of trademark infringement, unfair competition, and violation of Ohio's Deceptive Trade Practices Act.

No party has objected to the Magistrate Judge's recommendation regarding the disposition of the ARRT's counterclaims of trademark infringement under Section 42(a) of the Lanham Act, common law trademark infringement, unfair competition and violation of Ohio's Deceptive Trade Practice Act, and breach of contract and indemnification. Therefore, this Court assumes the parties are satisfied with the R & R's conclusions and recommendations. Any further review by this Court would be a duplicative and inefficient use of the Court's limited resources. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of Health and Human Services*, 932 F.2d 505 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

## VIII. Conclusion

Upon a *de novo* review of the record, where pertinent to Ms. Vistein's objections, this Court hereby adopts Magistrate Judge McHargh's carefully rendered recommendations as to the disposition of the claims and counterclaims in this matter.

Accordingly, pursuant to the R & R, the ARRT's motion for summary judgment is granted as to Ms. Vistein's due process claims, granted as to her claim for the intentional tortious interference with contractual and business relationships, and granted as to the ARRT's breach of contract and indemnification claims against Ms. Vistein with respect to her pursuit of her due process claims. The ARRT's motion for summary judgment is denied as to its breach of contract and indemnification claims against Ms. Vistein with respect to her pursuit of her intentional tortious interference with contractual and business relationships claim.

Ms. Vistein's motion for summary judgment on the ARRT's counterclaims of federal trademark infringement under Sections 32 and 43 of the Lanham Act, common law trademark infringement, federal unfair competition under Section 43 of the Lanham Act, common law unfair competition, and violation of Ohio's Deceptive Trade Practices Act is, hereby, denied. Further, this Court grants Ms. Vistein summary judgment on the ARRT's counterclaims of breach of contract and indemnification only as they pertain to the plaintiff's claim of intentional tortious interference with contractual and business relationships. In addition, this Court denies Ms. Vistein's motion for summary judgment on ARRT's counterclaims of breach of contract and indemnification as they pertain to the plaintiff's due process claims. For the reasons discussed above, this Court denies Ms. Vistein's request for Declaratory Judgment and finds her request for injunctive relief moot.

The case will proceed on the following issues: the ARRT's counterclaims of (1) federal trademark infringement under Sections 32 and 43 of the Lanham Act; (2) common law trademark infringement;

(3) federal unfair competition under Section 43 of the Lanham Act; (4) common law unfair competition; (5) violation of Ohio's Deceptive Trade Practices Act; and (6) breach of contract and indemnification as they pertain to Ms. Vistein's due process claims. The Court will arrange a telephonic status conference with counsel to discuss further pre-trial scheduling.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

KENNETH S. McHARGH, United States Magistrate Judge.

On October 24, 2006, Defendant The American Registry of Radiologic Technologists ("ARRT") filed a Motion for Summary Judgment seeking dismissal of all Plaintiff's claims against it. (Doc. 55.) According to the ARRT, summary judgment is warranted because Plaintiff has waived and released the claims she asserts, the Ohio Legislature has limited liability for the conduct of which Plaintiff complains, and Plaintiff has failed to establish the necessary elements to impose liability for a violation of due process and for tortious interference with contractual and/or business relationships. *Id.* On November 22, 2006, Plaintiff filed an Opposition to Defendant's Motion for Summary Judgment, in which she asserted that the waiver and release is an unconscionable contract of adhesion, the conduct complained of does not qualify for limited liability under Ohio law, and her due process and tortious interference claims have merit and a genuine issue of material fact exists which precludes an award of summary judgment. (Doc. 56.)

For reasons fully set forth below, the Magistrate Judge recommends the ARRT's Motion for Summary Judgment (doc. 55) be GRANTED in part and DENIED in part.

On November 22, 2006, Plaintiff Diana L. Vistein filed a Motion for Summary Judgment seeking dismissal of all of Defendant's counterclaims against her. (Doc. 58.) According to Plaintiff, summary judgment is warranted because the ARRT has failed to establish the necessary elements to impose liability for trademark infringement, unfair competition, violation of the Ohio Deceptive Trade Practices Act, indemnification, or breach of contract. Plaintiff also asserted that the ARRT's mark should be cancelled. *Id.* Defendant filed an Opposition to Defendant's Motion for Summary Judgment on December 13, 2006, in which the ARRT asserted that Plaintiff failed to meet her burden for seeking summary judgment on its counterclaims and cancellation of the ARRT's incontestable mark. (Doc. 60.)

For the reasons fully set forth below, the Magistrate Judge recommends Plaintiff's Motion for Summary Judgment (doc. 58) be GRANTED in part and DENIED in part.

## I. BACKGROUND

On September 12, 2005, Plaintiff filed suit against the ARRT in the Ashland County Court of Common Pleas, alleging her due process rights were violated when the ARRT revoked her ARRT certification without due process of law as secured by the Fourteenth Amendment to the United States Constitution and the Ohio Constitution and its laws (Doc. 1.). Plaintiff also alleged that the ARRT's actions constituted tortious interference with her contractual and/or business relationships with Ashtabula County Medical Center–Cleveland Clinic Foundation ("CCF") and Samaritan Health Systems ("Samaritan"). *Id.* On October 17, 2006, Defendant filed a Notice of Removal with this Court (doc. 1) and on October 20, Judge Wells signed an Order of Summary Remand because the ARRT filed its removal beyond the thirty

(30) day limit. (Doc. 4.) On October 25, 2005, the ARRT filed a Motion for Relief from the Court's order of summary remand (doc. 6), which was granted by Judge Wells on November 17, 2005. (Doc. 11.) On February 2, 2006, the ARRT filed a Motion for Leave to Amend Answer to Assert Counterclaims against Plaintiff (doc. 21), which was granted (Non-document Order approved by Judge Wells on March 17, 2007). ARRT alleged counterclaims of federal trademark infringement under Sections 32 and 43 of the Lanham Act, common law trademark infringement, federal dilution under Section 43 of the Lanham Act, federal unfair competition under Section 43 of the Lanham Act, common law unfair competition, violation of Ohio Deceptive Trade Practices Act, indemnification and breach of contract. The facts comprising the present litigation are as follows.

The ARRT is a national credentialing organization and registry of radiologic technologists formed in 1922 as the American Registry of X-Ray Technicians (Doc. 55, Kraker aff., at ¶ 2.) In 1962, the ARRT adopted the name it bears today. *Id.* The ARRT currently has more than 260,000 registrants today who have successfully met its education, testing and other requirements (Doc. 55, at 2.) Plaintiff first became certified with the ARRT in 1968 (Doc. 55, Kraker aff., at ¶ 9). She also became registered at that time and remained registered with the ARRT on an almost-continual basis until June 2003, when she allowed her registration to lapse after failing to submit her renewal application (Doc. 55, Kraker aff., ¶¶ 9–10, 14; DX 27, ARRT's Answers to Interrog. 5, 6, 13.)

In June 2004, Plaintiff submitted her ARRT card to the Ohio Department of Health ("ODH") to demonstrate that she had completed the necessary continuing education requirements. (Doc. 58, PX 6, Vistein dep. 40:8–18, 100:12–101:7.) Plaintiff had altered the ARRT card she submitted to the ODH by changing the "2003" to "2004." *Id.* at 170:9–14. Plaintiff claims she wanted to recognize an exemplary clerical employee who was planning on becoming a technologist and altered the card in order to be able to present to the employee to make her an "honorary" technologist. *Id.* at 153:19–154:8, 170:25–174:1. Plaintiff has also described the events surrounding her alteration of the card as part of a joke she was playing with the front desk secretary. (Doc. 58, PX 7, Kraker dep. 89:16–90:10.) After altering the card, Plaintiff put the card away. (Doc. 58, PX 6, Vistein dep. 153:19–154:8, 170:25–174:1.) Plaintiff claims that she submitted the altered card to the ODH without realizing that it was an altered 2003 ARRT card or that she had not received her 2004 ARRT card. *Id.* at 151:15–21. On June 18, 2004, after receiving the altered ARRT card submitted by Plaintiff, the ODH contacted the ARRT seeking to verify Plaintiff's registration status (Doc. 55, Kraker aff., at ¶ 15.) The ARRT informed the ODH that Plaintiff was not presently registered and that the ARRT credential card Plaintiff had submitted to the ODH was not issued by the ARRT and was not valid. *Id.*

The ARRT then sent Plaintiff a cease and desist letter, dated June 29, 2004, informing her that her conduct was unlawful and demanding that she stop misrepresenting herself as being registered with the ARRT. (Doc. 55, Kraker aff., at ¶¶ 19–20.) Plaintiff was informed that her conduct would be reviewed by the ARRT Ethics Committee at its next meeting, and that Plaintiff should submit an explanation of the situation within thirty (30) days of the date of the cease and desist letter. *Id.* After receiving Plaintiff's response, the ARRT informed her that her status would be reviewed at the Ethics Committee's

November 2004 meeting. (Doc. 55, Kraker aff., at ¶ 23–25; DX 19.)

Plaintiff was currently employed by CCF as the Department Manager in the Department of Radiology (Doc. 58, PX 6, Vistein dep. 36:20–38:30.) One of the requirements of Plaintiff's position was that she be registered with the ARRT. *Id.* After Plaintiff received the cease and desist letter, she informed her employer of her conduct with the ODH and the fact that she was not registered with the ARRT. *Id.* at 46:18–49:14. CCF offered Plaintiff the option of taking an unpaid suspension until she resolved the issue with the ARRT. *Id.* at 46:18–49:14; DX 30, 31. Rather than accept the unpaid suspension, which would have lasted a minimum of four months, Plaintiff resigned from her position with CCF on July 14, 2004 (Doc. 58, PX 6, Vistein dep. 53:11–14.) Prior to Plaintiff's receipt of the cease and desist letter, she was in contact with a recruiter about a position at Samaritan. *Id.* at 57:11–61:10. Plaintiff subsequently interviewed with Samaritan, and informed the interviewer of the fact that she was working through some credentialing issues, but she did not go into further detail. *Id.* at 61:5–62:4, 64:3–10, 68:22–69:22. It was Plaintiff's understanding that the position at Samaritan did not require her to be registered with the ARRT. *Id.* at 69:3–22. On or around August 5, 2004, Plaintiff was offered, and she accepted, the position at Samaritan as Director of Radiology. *Id.* at 72:20–73:22; doc. 55, DX 32.

After its November meeting, the ARRT Ethics Committee sent Plaintiff a letter, dated November 19, 2004, informing Plaintiff that it had concluded Plaintiff violated the ARRT Rules and Regulations and/or Standards of Ethics when she sent in an altered ARRT card to the ODH. (Doc. 55, DX 22.) The letter further stated that the ARRT Ethics Committee was recommending revocation of her ARRT certification and that Plaintiff could request a hearing within thirty (30) days from the date the letter was mailed, that the decision would become final if no hearing request was made, and that once final, the decision would not be addressed for three years. *Id.* Plaintiff was aware that the Ethics Committee would be reviewing her case and making a decision at its November 2004 meeting, but she claims that she did not receive the Committee's letter dated November 19, 2004 (Doc. 58, PX 6, Vistein dep. 63:4–9, 121:1–3, 122:8–11, 132:2–4, 155:21–156:4; doc. 55, DX 19.) Plaintiff acknowledged that although she did not know that she had thirty (30) days within which to request a hearing after a decision was rendered by the Ethics Committee, she should have known this fact because she had information about the procedures of the ARRT's Ethics Committee, including the time frame within which an individual must request a hearing. (Doc. 58, PX 6, Vistein dep. 219:23–222:25.) Plaintiff did not make an effort to learn of the Ethics Committee decision and did not appeal the decision. *Id.* at 131:22–137:3.

In April 2005, the ARRT printed Plaintiff's name in its Annual Report as having been ethically sanctioned. *Id.* at 131:1–12, 135:1–14. On April 18, 2005, Samaritan contacted the ARRT seeking information about the circumstances of Plaintiff's ethics sanction (Doc. 55, Kraker aff., at ¶¶ 20–22, DX 23, 24.) Samaritan allowed Plaintiff to continue working until September 15, 2005, when she was terminated because she was unable to get the ethics sanction removed. (Doc. 58, PX 6, Vistein dep. 162:33–164:17; doc. 55, DX 33.)

Plaintiff is now suing the ARRT, alleging a violation of her constitutional rights pursuant to 42 U.S.C. § 1983 and the Ohio Constitution, and intentional interference with her contractual and/or business relationships. (Doc. 1.) The ARRT filed

against Plaintiff counterclaims of federal trademark infringement, dilution, and unfair competition under the Lanham Act, common law trademark infringement and unfair competition, violation of the Ohio Deceptive Trade Practices Act, indemnification, and breach of contract. (Doc. 21.) The federal dilution claim under the Lanham Act was subsequently voluntarily dismissed. (Doc. 29.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the entire record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Non-moving parties cannot simply rest upon the allegations of their pleadings or general allegations in establishing that issues of fact may exist. *Bryant v. Commonwealth of Kentucky*, 490 F.2d 1273, 1275 (6th Cir.1974). The Supreme Court has held "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The evidence need not be in a form admissible at trial in order to avoid summary judgment, but Rule 56(e) requires the opposing party "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548.

The Sixth Circuit in *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir.1989), has interpreted *Celotex* and two related cases, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), as establishing a "new era" of favorable regard for summary judgment motions. *Street* points out the movant has the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. 886 F.2d at 1479. This burden may be met by pointing out to the court the nonmovant, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case. *Id.*

In ruling on a motion for summary judgment, the Court must construe the evidence, as well as any inferences to be drawn from it, in the light most favorable to the party opposing the motion. *See Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 229 (6th Cir.1990). The Court must also determine "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one sided that one party must, as a matter of law, prevail over the other." *Anderson*, 447 U.S. at 249, 100 S.Ct. 2124. In reaching such a determination, however, the Court is not to decide disputed questions of fact, but only to determine whether genuine issues of fact exist. *Id.* at 248–49, 100 S.Ct. 2124.

## III. PLAINTIFF'S CLAIMS: LAW AND ANALYSIS

### A. Waiver and Release

The ARRT claims that Plaintiff contractually waived and released her due process and tortious interference claims when she submitted her Application for Renewal of Registration on or around May 24, 2002, in which she agreed to be legally bound by the terms and conditions set forth in the Agreement of Applicants for Renewal of Registration ("Agreement"). (Doc. 55, at 5.) The Agreement provides:

I hereby waive and release, and shall indemnify and hold harmless, the ARRT ... from, against, and with respect to any and all claims, losses, costs, expenses, damages, and judgments (including reasonable attorney's fees) that arise or are alleged to have arisen, from, out of, with respect to, or in connection with any action which they, or any of them, take or fail to take as a result of or in connection with this application, ... the failure of the ARRT to renew the registration of a certificate previously issued to me, or the ARRT's notification of legitimately interested persons of such actions taken by the ARRT. I understand and agree that in the event of my breach of or default in any provision of this Application and Agreement in any respect whatsoever, the ARRT shall have the absolute right, in its absolute discretion, to revoke or suspend any certificate issued to me, refuse renewal of the registration of my certificate, censure me, and/or cancel my registration with the ARRT and to provide information regarding such circumstances to all legitimately interested persons without restriction.

(Doc. 55, DX 7.) Plaintiff claims that although she signed the Agreement, it is not enforceable because its terms constitute an unconscionable contract of adhesion. (Doc. 58, at 5.)

■ A contract of adhesion is a contract offered "on essentially [a] 'take it or leave it' basis.' " *Sekeres v. Arbaugh,* 31 Ohio St.3d 24, 31, 508 N.E.2d 941 (Ohio 1987) (quoting Black's Law Dictionary 38 (5th ed.1979)). The ARRT admits that the terms of its renewal application are non-negotiable and that the ARRT would not consider any attempt to alter those terms binding (Doc. 56, PX 11, at 5.) Accordingly, the Agreement can reasonably be viewed as a contract of adhesion which seeks to limit the ARRT's liability under certain circumstances.

■ Ohio recognizes limitation of liability clauses. *Nahra v. Honeywell, Inc.* 892 F.Supp. 962, 969 (N.D.Ohio 1995). Such clauses will be upheld, "absent important public policy concerns, unconscionability, or vague and ambiguous terms," *Collins v. Click Camera & Video, Inc.,* 86 Ohio App.3d 826, 832, 621 N.E.2d 1294 (Ohio Ct.App.1993). Unconscionability is characterized by an "absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party." *Id.* at 834, 621 N.E.2d 1294. Courts have found that when an individual voluntarily agrees to something in order to obtain employment, the individual is not being forced to do anything. *See Morrison v. Circuit City Stores, Inc.,* 70 F.Supp.2d 815, 822 (S.D.Ohio 1999). Although Plaintiff's previous positions required ARRT registration, ARRT registration is not required to be a radiologic technician and Plaintiff's position with Samaritan did not require ARRT registration. (Doc. 58, PX 6, Vistein dep. 40:8–25, 90:20–13.)

Procedural unconscionability occurs when no voluntary meeting of the minds is possible. *Taylor Bldg. Corp. of Am. v. Benfield,* 2006 Ohio 4428, at *P20, 168 Ohio App.3d 517, 860 N.E.2d 1058 (2006). Courts consider the following factors in determining procedural unconscionability: (1) the relative bargaining positions of the parties; (2) whether the terms of the provision were explained to the weaker party; and (3) whether the party claiming that the provision is unconscionable was represented by counsel at the time the contract was executed. *Id.* Plaintiff claims these factors weigh in her favor. (Doc. 56, at 7–8.) First, Plaintiff claims the parties have unequal bargaining power because ARRT is a national organization with considerable resources while Plaintiff is an individual with extremely limited resources. *Id.* Sec-

ond, the renewal form is mailed en masse to registrants with no explanation of its terms. *Id.* Third, Plaintiff was not represented by counsel at the time she signed the renewal application. *Id.*

It is undisputed, however, that Plaintiff is an educated, experienced and mature professional who signed renewal applications for ARRT registration with the exact same terms for the prior nine years. (Doc. 55, Kraker aff., at ¶¶ 9–14; DX 27, ARRT's Answers to Interrog. 5, 6, 13; doc. 61, DX 1.) Plaintiff presumably had many opportunities to review the text and/or seek legal counsel in effort to understand the extent of its terms. Moreover, Plaintiff made no claims that she failed to read or understand the waiver, or that its terms were vague or ambiguous, or that her signature was procured by fraud or duress. *See* doc. 56. Based upon the above, the Magistrate Judge concludes that the Agreement was not procedurally unconscionable.

In determining substantive unconscionability, courts consider whether the contract's terms are unfair and commercially unreasonable. *Dorsey v. Contemporary Obstetrics & Gynecology, Inc.*, 113 Ohio App.3d 75, 80, 680 N.E.2d 240 (Ohio Ct.App.1996). Although there is not a generally accepted list of factors courts must consider in determining substantive unconscionability, courts have considered the following: the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability. *Collins* at 834, 621 N.E.2d 1294. Plaintiff claims these factors favor a finding that the ARRT's contract is substantively unconscionable. (Doc. 56, at 8.) First, Plaintiff states that by signing the renewal application, an applicant purportedly waives, releases, and agrees to indemnify the ARRT with respect to any outcome that arises from any action which the

ARRT takes or fails to take in connection with the application, the failure of the ARRT to renew the registration of a certificate previously issued or the revocation of a certificate previously issued. *Id.* If the applicant sues the ARRT and prevails, she will be responsible for the ARRT's attorney's fees and any judgment awarded to the applicant against the ARRT. *Id.* Moreover, any applicant who has the audacity to challenge the ARRT's "sole and absolute discretion" may have her certificate revoked and can be censured for the attempt. *Id.*

Defendant counters that the waiver and release language is commercially reasonable—the agreement contains only five paragraphs and Plaintiff has not claimed that its terms are vague, ambiguous, or otherwise not understood. (Doc. 60, at 5–7.) The waiver does not grant the ARRT unlimited rights, but rather, is limited to claim involving actions the ARRT takes with respect to renewal applications and related scores, revocation of certification, and notification of interested parties of actions by the ARRT. *Id.* The agreement does not give the ARRT absolute discretion for anything, rather, it gives the ARRT absolute discretion to revoke or suspend certification, refuse renewal, censure, and/or cancel registration when an applicant has breached or defaulted on her application and agreement. *Id.* The cost of each renewal application is fifteen dollars ($15.00), which is minimal when compared to the potential liability that could be incurred in the absence of the waiver agreement. *Id.* at 5–6. Moreover, the extent of potential liability would be unpredictable because the ARRT would have no ability to guess with any degree of certainty which individual applicants might attempt to sue, on what grounds, or the applicability of punitive damages. *Id.* The waiver agreement cannot be deemed unconscionable merely because both parties

to the contract do not have to pay the other's attorney fees for the enforcement of their rights under the agreement. *Id.* at 7. Finally, this type of agreement is reasonable among professional credentialing organizations and has consistently been found to be valid and enforceable. *Id.*

It is true that waivers have been upheld in other cases involving medical boards and that the ARRT's own waiver has also been upheld. The District Court for the Northern District of Minnesota has held that the plaintiff's claims of due process, breach of contract, and breach of the implied covenant of good faith and fair dealing were barred because he executed a valid waiver and release of all claims against the American Board of Physical Medicine and Rehabilitation ("ABPMR") when he applied for ABPMR certification. *See Whyte v. Am. Bd. of Physical Med. & Rehabilitation*, 393 F.Supp.2d 880 (D.Minn.2005). The court reasoned that proof the plaintiff had no opportunity to negotiate the terms of the exculpatory agreement was not enough to show a disparity of bargaining power; the plaintiff fully understood the application terms and never even attempted to negotiate a modification of those terms; the plaintiff voluntarily chose to apply for certification and presented no evidence that board certification was a practical necessity for his livelihood. *Id.* at 889. The court also explained that the exculpatory clause promotes public policy by allowing a private organization that establishes the rules of application and membership to insist applicants agree to a legal cease-fire. *Id.*

The Court of Appeals for the Seventh Circuit affirmed the District Court's dismissal of the plaintiffs' suit against the American Board of Psychology and Neurology in *Sanjuan. v. The Am. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247 (7th Cir.1994). The court concluded the plaintiffs' due process claims were barred by their execution of a release, in which plaintiffs agreed to resolve any disagreements regarding board certification through the board's internal processes. *Id.* The court reasoned that the alternative to such a release is higher application fees, which most physicians would prefer to avoid. *Id.*

In *ARRT v. McClellan*, the District Court granted summary judgment to the ARRT on Plaintiff's counterclaims because each of the plaintiff's claims were charges of different types of impropriety by the ARRT surrounding revocation of his certification, and the plaintiff had contracted away his right to bring claims against the ARRT for any action arising from the revocation of his certification. No. 00–2577, 2003 U.S. Dist. LEXIS 3222 (N.D. Texas 2003).

Although the Agreement is undisputedly broad and its impact potentially harsh, the Court finds the above cases support a finding that the Agreement is not substantively unconscionable. The charge of fifteen dollars ($15.00) per renewal application, as compared to the ARRT's potential liability, which cannot be easily predicted, weighs heavily in favor of the ARRT's exculpatory clause. In addition, similar waivers of liability have been enforced in registration and certification cases in the health care industry.

Based upon the above, the Court concludes that the Agreement constitutes a valid and enforceable waiver which applies to Plaintiff's due process claims. The Agreement effectively bars Plaintiff's due process claims and requires her to indemnify the ARRT with respect to its losses, costs, expenses, damages, and judgments, including reasonable attorneys' fees, arising from her pursuit of this claim in the present litigation. The Agreement does not apply to Plaintiff's intentional tortious

interference with contract claim because a party cannot contractually limit its liability for intentional acts. *See Whyte* at 889; *Diamond Wine & Spirits v. Dayton Heidelberg Distrib. Co.*, 148 Ohio App.3d 596, 604, 774 N.E.2d 775 (2002). Thus, Plaintiff's intentional tortious interference with contract claim is not barred and Plaintiff would not be required to indemnify the ARRT with respect to its losses, costs, expenses, damages, judgments, and attorney's fees arising from this claim. The Court also concludes that by its terms, the Agreement does not extend to the ARRT's counterclaims of trademark infringement, unfair competition, and violation of the Ohio Deceptive Trade Practices Act and consequently, Plaintiff is not required to indemnify the ARRT with respect expenses incurred in pursuing these claims.

## B. Limited Liability under Ohio Revised Code § 2305.251

The ARRT next claims that it is immune from liability for the conduct of which Plaintiff complains under Ohio Revised Code § 2305.251(A)(2006), which provides that "no health care entity shall be liable in damages to any person for any acts, omissions, decision, or other conduct within the scope of the functions of a peer review committee of the health care entity." A "health care entity" is defined as:

an entity, whether acting on its own behalf or on behalf of or in affiliation with other health care entities, that conducts as part of its regular business activities professional credentialing or quality review activities involving the competence of, professional misconduct of, or quality of care provided by health care providers, including both individuals who provide health care and entities that provide health care.

R.C. § 2305.25(A)(1) (2006). A "peer review committee" is defined as:

a utilization review committee, quality assessment committee, performance im-

provement committee, tissue committee, credentialing committee, or other committee that does either of the following:
(a) conducts professional credentialing or quality review activities involving the competence of, professional conduct of, or quality of care provided by health care providers, including both individuals who provide health care and entities that provide health care;
(b) conducts any other attendant hearing process initiated as a result of a peer review committee's recommendations or actions.

R.C. § 2305.25(E)(1) (2006). Immunity under § 2305.251 does not bar an individual's claims, but rather, prohibits the recovery of damages. Plaintiff has requested injunctive and declaratory relief in addition to monetary damages. *See* doc. 1. Accordingly, any application of §§ 2305.251 and 2305.25 to Plaintiff's claims will not bar Plaintiff from obtaining injunctive and/or declaratory relief.

The ARRT asserts that it qualifies as a "health care entity" and that its Ethics Committee qualifies as a "peer review committee" under § 2305.25 and that its conduct in considering the evidence related to Plaintiff's alleged violation of the ARRT's Standards of Ethics plainly falls within the coverage of § 2305.251(A). (Doc. 55, at 8.) The Court agrees with the ARRT's assertions. It appears, and Plaintiff points to no fact which would reasonably support a different conclusion, that the ARRT is an entity that conducts professional credentialing and/or quality review activities involving the competence of and professional misconduct of individuals who provide health care, or radiologic technologist services, qualifying it as a "health care entity" under § 2305.25(A)(1). The ARRT's Ethics Committee conducts quality review activities involving the competence or professional misconduct of indi-

viduals who provide radiologic technologist or health care services, and thus, qualifies as a "peer review committee" under § 2305.25(E)(1). The Ethics Committee's consideration of Plaintiff's alleged ethics violation and subsequent revocation of her certification and publication of that revocation appear to fall within the scope of the functions of a peer review committee of the ARRT.

Plaintiff claims that the immunity provided by §§ 2305.251 and 2305.25 cannot extend to her due process claims, citing *Sullivan v. St. Charles Hosp.*, No. 97–1101, 1997 WL 728624, 1997 Ohio App. LEXIS 5274 (Ohio Ct.App.1997). (Doc. 56, at 10–11.) This case is inapposite, as it deals with the former version of § 2305.251. Plaintiff also cites *Kalb, et al. v. Morehead, et al.*, 100 Ohio App.3d 696, 654 N.E.2d 1039 (Ohio Ct.App.1995) for the proposition that state law cannot interfere with an individual's right to pursue federal claims. (Doc. 56, at 11). However, this case concerns the interplay between state and federal law relating to discrimination and the exhaustion of administrative remedies. Thus, it is inapplicable to the present case.

Based upon the above, the Court concludes the ARRT qualifies for statutory immunity under Ohio Revised Code §§ 2305.251 and 2305.25. Under Ohio law, the ARRT is entitled to summary judgment precluding Plaintiff from recovering damages for her due process and intentional tortious interference claims unless Plaintiff overcomes the ARRT's immunity by establishing a genuine issue of material fact that the ARRT's actions were taken with actual malice. *See Jacobs v. Frank*, 60 Ohio St.3d 111, 573 N.E.2d 609 (Ohio 1991); *Wall v. Ohio Permanente Med. Group, et al.*, 119 Ohio App.3d 654, 666,

695 N.E.2d 1233 (1997). Actual malice is defined as acting with knowledge that the communications made were false or with reckless disregard as to their truth or falsity. *Jacobs* at 116, 573 N.E.2d 609. Actual malice in the context of this case requires proof that the ARRT "made statements in connection with the peer review process with knowledge that they were false or with reckless disregard for whether they were true or false." *Wall* at 666, 695 N.E.2d 1233, *citing Jacobs*, 60 Ohio St.3d at 114–15, 573 N.E.2d 609.

Plaintiff claims the ARRT was aware of her contractual and/or business relationships with CCF and Samaritan and wrongfully attempted to breach those relations without justification and that the ARRT's revocation of Plaintiff's certification deprived her of her due process rights. (Doc. 1.) Plaintiff claims the ARRT lacked justification in its actions because it purported to sanction Plaintiff without determining whether she intended to mislead or made an innocent mistake and because the ARRT knows of no patients that were harmed as a result of Plaintiff's actions. (Doc. 56, at 17–18.) However, the ARRT's rules provide that an individual may be subject to ethical sanctions for engaging in any unethical conduct, including conduct likely to deceive, defraud, or harm the public, which is Rule 10, and engaging in false, fraudulent, deceptive or misleading communications to any person regarding the individual's education, training, credentials, experience, or qualifications, or the status of the individual's state permit, license or registration certificate in RT or certification of registration with the ARRT, which is Rule 20 (Doc. 55, DX 14, at 2–3).[1] Thus, the language of the ARRT's rules makes it clear that an indi-

---

**1.** Plaintiff has acknowledged that she was aware of the ARRT's rules and regulations and ethical rules. (Doc. 58, PX 6, Vistein dep. 217:15–25–218:24.) The ARRT publishes its rules and regulations each year in its Annual Report, which is mailed to all ARRT registrants. *Id.;* doc. 55, DX 7.

vidual may be subject to sanctions under Rules 10 or 20 without consideration of the motive behind the individual's conduct. Plaintiff has provided no other evidence relating to the character of the ARRT's actions leading to the present litigation.

It is undisputed that the Ethics Committee's investigation of Plaintiff's conduct necessarily required the Committee to review the alleged ethics violation and supporting materials and determine whether or not the Plaintiff's conduct warranted sanctions. (Doc. 58, PX 6, Vistein dep. 122:2–14; PX 7, Kraker dep. 92:1–23; doc. 55, DX 14; doc. 56, at 3.) The Ethics Committee determined that Plaintiff's conduct warranted revocation of her certification and this determination was subsequently published in the ARRT's Annual Report. (Doc. 55, DX 22; doc. 58, PX 7, Kraker dep. 102:14–22.) It cannot be inferred, based upon these facts, that the ARRT acted with actual malice with respect to Plaintiff's alleged ethical violation or with respect to her positions at CCF and Samaritan. Plaintiff has failed to provide competent evidence raising a genuine issue of material fact sufficient to preclude summary judgment. The Magistrate Judge recommends the motion for summary judgment be granted as to the ARRT's statutory immunity under Ohio Revised Code §§ 2305.251 and 2305.25, and thus, Plaintiff is precluded from recovering damages for her due process and intentional tortious interference claims.

### C. Plaintiff's Due Process Claims

Plaintiff alleges that the ARRT's actions violated her due process rights secured by the Fourteenth Amendment to the Constitution and Article I, Sections 1 and 16 of the Ohio Constitution. (Doc. 1.) Although Plaintiff's due process claims are barred for the reasons detailed above, the ARRT would be entitled to summary judgment on these claims if they were considered on their merits because Plaintiff has failed to

meet the threshold showing that the ARRT qualifies as a state actor.

42 U.S.C. § 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." To prevail on such a claim, a plaintiff must establish there was a "deprivation of a right secured by the Constitution," and that "the deprivation was caused by a person acting under color of state law." *Wittstock v. Mark A. Van Sile Inc.*, 330 F.3d 899, 902 (6th Cir.2003). The due process protections afforded by the Ohio Constitution are essentially equivalent to the due process protections provided under the Fourteenth Amendment to the Constitution. *See State ex rel. Heller v. Miller*, 61 Ohio St.2d 6, 8, 399 N.E.2d 66 (Ohio 1980). Therefore, Plaintiff's state law due process claim also requires Plaintiff establish that her due process rights have been violated by a state actor.

This Court has previously determined that the facts alleged by Plaintiff up to and including her Reply to Defendant's Memorandum in Opposition to Plaintiff's Motion to Compel were insufficient to establish that the ARRT is a state actor:

> The Court finds no effort by the plaintiff, in the record before it, to suggest that ARRT is a state actor in the actions for which Vistein seeks a remedy—the ethical complaint process, carried out by ARRT in its internal investigation by which Ms. Vistein lost her ARRT accreditation.... [M]ere communication with the State of Ohio does not make ARRT a state actor for the purposes of the due process doctrine.... Moreover, that the State of Ohio utilizes ARRT registration as a means, but not the only avenue, for satisfying an applicant's continuing

education requirements, does not make ARRT a state actor for purposes of Ms. Vistein's due process complaint involving the ethical violations process initiated by ARRT. Neither party disputes that the State of Ohio Radiologic Technician's licensing process does not require ARRT registration.

(Doc. 14.). Plaintiff asserts that the additional facts alleged in her Reply to Defendant's Motion for Summary Judgment are sufficient to create a genuine issue of fact as to whether the intertwining of the ARRT and the State of Ohio ("State") converts the ARRT into a state actor. (Doc. 56.) In support, Plaintiff asserts that the State informed her that it would not go forward with a hearing until such time as the ARRT rendered its decision regarding the circumstances under which the card was altered. *Id.* at 13. Following the ARRT's finding of an ethics violation, the State never set Plaintiff's appeal for a hearing. *Id.* Plaintiff claims a genuine issue of fact exists as to whether the State was embracing the ARRT's recommendations, thereby turning the ARRT's actions into state actions. *Id.* at 14. Plaintiff also claims the ARRT has stated its intention to increase cooperation with state licensing agencies to decrease duplicative efforts in investigating potential wrongdoing and the ARRT mails to the State a list of all people who have disciplined by the ARRT. *Id.* at 13–14. The Court concludes that the additional facts alleged by Plaintiff are insufficient to overcome the determination that the ARRT is not a state actor.

The Supreme Court has set forth three tests to determine whether an action is "fairly attributable to the state." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir.1992). These tests include: (1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test. *Id.*

### 1. Public Function Test

The public functions test requires Plaintiff to show that the ARRT engaged in action "traditionally exclusively reserved to the state, such as holding elections ... or eminent domain." *Id.; see also Talwar v. Catholic Healthcare Partners, et al.*, No. 05–7437, 2006 WL 3526792, 2006 U.S. Dist. LEXIS 88280 (N.D.Ohio 2006). The court in *Talwar* determined that a private entity's investigation and review of an individual's medical practice was not an action traditionally reserved to the state. 2006 WL 3526792, 2006 U.S. Lexis 88280. The evaluation and accreditation of medical education is not a traditional or an exclusive state function. *McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 525 (3rd Cir.1994). The ARRT is a national credentialing organization and registry of radiologic technologists, and thus, does not qualify as a state actor under the public function test.

### 2. State Compulsion Test

"The state compulsion tests requires that a state exercise such coercive power or provide such significant encouragement ... that in law the choice of the private actor is deemed to be that of the state." *Wolotsky* at 1335. Where there is no indication that a private actor's choices were significantly encouraged or coerced by the state, the private actor's actions will not be considered actions of the state. *Talwar* at 2006 WL 3526792, *2, 2006 U.S. Lexis 88280, *6. Plaintiff has presented no evidence that the ARRT's actions were significantly encouraged or coerced by the State and thus, the ARRT does not qualify as a state actor under the state compulsion test.

### 3. Symbiotic Relationship or Nexus Test

The symbiotic relationship test requires a "significantly close nexus between the state and the challenged action of the reg-

ulated entity so that the action of the latter may be fairly treated as that of the state itself." *Wolotsky* at 1335. Plaintiff argues that the ARRT's conduct has become so entwined with governmental policies as to become subject to the constitutional limitations of a state actor. (Doc. 56, at 12–14.) In support of this argument, Plaintiff claims that the State and the ARRT are in contact on a weekly basis, the ARRT administers a test considered standard in the industry, which the State uses in determining whether an individual should be issued a state license, and the ARRT informs the State of the individuals who were sanctioned by the ARRT at its last meeting. *Id.* The ARRT counters that Plaintiff has failed to identify facts supporting a nexus between the State and the ARRT's internal investigation and subsequent revocation of Plaintiff's ARRT certification. (Doc. 60, at 10–12.) The State played no role with respect to the ARRT's internal investigation of Plaintiff's alleged ethics violation, and has no involvement in the selection of the ARRT's Board and Ethics Committee or their actions and decisions, rules, standards or bylaws. *Id.*

The ARRT's arguments are well taken. The Supreme Court has made clear that the fact that a public entity takes some action based upon the recommendation of a private entity does not convert the private entity into a state actor. *See Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988). Moreover, in *Sanjuan*, the court determined that the American Board of Psychiatry and Neurology, Inc., which administered oral examinations for board certification was not a state actor. 40 F.3d 247. The court explained "state and local governments are responsible for their own decisions, and the persons aggrieved by those decisions must complain against their authors (the states themselves)." *Id.* at 250. Plaintiff has not presented any evidence that the State played a role in the ARRT's handling of Plaintiff's alleged ethics violation. Accordingly, the Court finds that the ARRT does not qualify as a state actor under the symbiotic relationship test.

Plaintiff has failed to offer competent evidence raising a genuine issue of material fact as to whether the ARRT is a state actor. The Magistrate Judge recommends the motion for summary judgment be granted as to Plaintiff's due process claims under 42 U.S. § 1983 and the Ohio Constitution.

## D. Plaintiff's Intentional Tortious Interference Claim

Plaintiff's claim of intentional tortious interference with contractual and/or business relationships also fails on its merits. Plaintiff alleges that the ARRT knowingly and intentionally interfered with her employment relationships with both CCF and Samaritan by labeling Plaintiff's conduct an ethics violation and publishing its decision in its Annual Report. (Doc. 1.) Plaintiff asserts the ARRT knew the weight employers give to ARRT registration and ethics sanctions, knew it was certain or substantially certain that she would lose her positions with CCF and Samaritan as a result of the ARRT's actions, and Plaintiff did in fact lose her positions with CCF and Samaritan. (Doc. 56, at 17.) In response, the ARRT argues that Plaintiff's resignation from CCF is fatal to her claim. (Doc. 55, at 16.) The ARRT also argues that Plaintiff has presented no facts indicating that the ARRT's communication with Samaritan was anything but truthful and made in response to a legitimate inquiry, and thus qualifiedly privileged. *Id.* at 19–20.

 Ohio law recognizes claims for both tortious interference with contractual and/or business relationships and wrongful interference with an employment relationship. *Dryden v. Cincinnati Bell Telephone, et al.,* 135 Ohio App.3d 394, 400, 734

N.E.2d 409 (Ohio Ct.App.1999). The tort of wrongful interference with an employment relationship requires a showing of wanton or malicious conduct while Ohio's approach to the tort of intentional interference with employment relationships is based upon the *Restatement (Second) of Torts. Id.* The elements for intentional tortious interference with contract are: (1) the existence of a contract or employment relationship; (2) the wrongdoer's knowledge of the contract or relationship; (3) the wrongdoer's intentional procurement of the contract's breach or termination of the employment relationship; (4) lack of justification; and (5) resulting damages. *See Fred Siegel Co., L.P.A. v. Arter & Hadden,* 85 Ohio St.3d 171, 176, 707 N.E.2d 853 (Ohio 1999).

Plaintiff's claim of intentional interference with her business relationship requires consideration of whether the ARRT's actions were justified. *Id.* Lack of justification requires proof that the defendant's interference was improper. *Id.* Courts have framed the inquiry both as a question of whether the person intentionally interfered without privilege to do so and as a question of whether the person interfered without justification. *See In re Gettys,* 205 B.R. 515, 521 n. 3 (Bkrtcy. S.D.Ohio 1997). The Second Restatement inquiry as to whether the interference was improper embraces the issue of privilege and thus, these inquiries are harmonious. *See Id.*

■ Courts look to the following factors in determining whether the defendant's conduct in intentionally interfering with a contract or employment relationship is improper: "(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of the action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties." *Fred Siegel* at 176, 707 N.E.2d 853, *citing the Restatement (Second) of Torts* § 767 (1979).

Plaintiff claims the first factor, the nature of the ARRT's conduct, weighs in her favor because the ARRT did not ascertain the surrounding circumstances with respect to the altered card. (Doc. 56, at 17–18.) Admittedly, the consequences of the ARRT's handling of Plaintiff's situation seems rather harsh. However, the details surrounding the ARRT's handling of the alleged ethics violation are not entirely clear, and as mentioned previously, an individual may be subject to sanctions under the ARRT's rules without consideration of the motive behind the individual's conduct. Thus, this factor does not clearly favor one party over the other.

The second factor concerns the actor's motive. Defendant claims its handling of Plaintiff's situation was motivated by its desire to protect its trademark. (Doc. 56, at 18.) However, there is only one incident in which Plaintiff presented an altered card that may have infringed upon the ARRT's trademark rights. It is undisputed that Plaintiff met all of the requirements for renewal of her registration, but that she had failed to send in her renewal form and a fee of fifteen dollars ($15.00). *See* doc. 58, PX 6, Vistein dep. 52:4–14; 89:5–91:4. The potential damage to the ARRT's trademark rights arising from the single alleged incident is minimal in comparison to the impact on Plaintiff from the ARRT's handling of her alleged violation. Thus, this factor tends to weigh in Plaintiff's favor.

The next factor is the interests of Plaintiff with which the ARRT interfered, and Plaintiff claims these interests are great. (Doc. 56, at 18–19). She has been regis-

tered with the ARRT for more than thirty (30) years and has established a long career in the field of radiologic technology, which has effectively been ruined by her ordeal with the ARRT. (Doc. 55, Kraker aff., at ¶¶ 9–10, 14; doc. 56, at 20.) Plaintiff asserts she had an interest in her positions with both CCF and Samaritan, which she lost as a result of the ARRT's actions. (Doc. 56, at 18–20.) Plaintiff received a cease and desist letter dated June 29, 2004, which informed her that she was no longer registered and that the ARRT Ethics Committee would be reviewing her conduct at its next meeting in November (Doc. 55, Kraker aff., at ¶¶ 19–20; DX 13.) Upon receiving the ARRT's letter, Plaintiff notified CCF that she was no longer registered. (Doc. 58, PX 6, Vistein dep. 47:11–48:18.) CCF offered Plaintiff unpaid suspension until she resolved the issue with the ARRT. *Id.* However, Plaintiff did not accept the CCF's offer because she could not "go without work that long," which would have amounted to at least five months without working. *Id.* Plaintiff subsequently resigned and accepted a position at Samaritan. *Id.* at 53:15–73:18. Plaintiff eventually lost this position because she was unable to have the ARRT's ethics sanction lifted. *Id.* at138:2–146:23. Thus, this factor weighs in favor of Plaintiff with respect to her positions at both CCF and Samaritan.

The fourth factor is the interests sought to be advanced by the ARRT through its conduct. The ARRT has great an interest in keeping the costs of renewal and certification low. And, maintaining the integrity of the ARRT's reputation and credentialing practices is essential to its role as a national credentialing organization utilized by states and radiologic technologists. However, the ARRT has provided no concrete evidence that Plaintiff's actions compromised the integrity of the organization in the eyes of either individual states or radiologic technologists who use and rely upon the ARRT and its services.

The fifth factor concerns social interests. Social interests favor the ARRT's freedom to protect itself from misuse of its mark and misrepresentation by individuals that they are registered with the ARRT when, in fact, they are not registered. However, social interests also favor Plaintiff's employment relationship interests with CCF and Samaritan. This factor does not appear to weigh in favor of one party over the other.

The next factor concerns the proximity of the ARRT's conduct to the alleged interference. The ARRT's actions are more removed from Plaintiff's loss of her job at CCF than Samaritan because she resigned from her position at CCF instead of accepting unpaid suspension. The ARRT's actions are more proximately related to Plaintiff's loss of her job at Samaritan. After determining Plaintiff had committed an ethics violation, the ARRT named her in an Annual Report as having been ethically sanctioned, which prompted Samaritan to contact the ARRT to investigate the circumstances of the sanction. (Doc. 58, PX 6, Vistein dep. 138:2–146:23.) Plaintiff was unable to get the ethics sanction removed, resulting in the termination of her position at Samaritan. *Id.*

The last factor concerns the relations between the parties. The ARRT and Plaintiff have a long-term relationship. Plaintiff has held ARRT certification and registration for thirty (30) years and was still certified by the ARRT at the time of the alleged trademark violation. (Doc. 55, Kraker aff., at ¶¶ 9–10, 14.)

In conclusion, the factors for determining whether the ARRT's conduct was improper appear to favor Plaintiff. However, the ARRT has demonstrated that its conduct was qualifiedly privileged. The evidence demonstrates that the communi-

cations made by the ARRT to Samaritan were made to an interested entity at that entity's request and were limited in scope to Samaritan's inquiry. *See Smith v. Ameriflora 1992, Inc.,* 96 Ohio App.3d 179, 184–5, 644 N.E.2d 1038 (1994); *Jacobs,* 60 Ohio St.3d at 113, 573 N.E.2d 609. In order to overcome the ARRT's qualified privilege, Plaintiff must demonstrate that the ARRT acted with actual malice. *Jacobs* at 114, 573 N.E.2d 609. This Court concluded above that Plaintiff has failed to establish a genuine issue of material fact as to whether the ARRT's actions were taken with actual malice. Because Plaintiff has failed to produce facts sufficient to overcome the ARRT's qualified privilege, the Magistrate Judge recommends the motion for summary judgment be granted as to Plaintiff's claim of intentional interference with contractual and/or business relationships.

## IV. *DEFENDANT'S COUNTER-CLAIMS: LAW AND ANALYSIS*

### A. Trademark Infringement

#### 1. Cancellation

Plaintiff claims she is entitled to summary judgment on the ARRT's trademark infringement claims because the collective membership mark at issue is subject to cancellation. (Doc. 58, at 5.) Plaintiff claims the ARRT's collective membership mark should be cancelled because it is not, in fact, used to indicate membership in the ARRT's organization, but rather, serves as a certification mark. *Id.* at 5–8. The ARRT has maintained that it is not a membership organization and that its only "members" are the members of its Board of Trustees, not the thousands of individual radiologic technologists who maintain ARRT certification and registration. (Doc. 58, PX 6, Kraker dep. 6:15–18.) Plaintiff claims the Patent and Trademark Office ("PTO") never would have granted the ARRT's collective membership mark

application if it had known that the ARRT tells its affiliates that they are certified and registered, but not members, and therefore, the ARRT necessarily gained its mark through fraud on the PTO. (Doc. 58, at 8–10.)

It is undisputed that the ARRT's trademark registration is incontestable. *Id.* at 8. Thus, in order to prevail on a claim of fraudulent procurement of registration, which would subject the ARRT's collective membership mark to cancellation, Plaintiff must prove that the ARRT's mark is not a collective membership mark and that the ARRT knowingly made false or misleading statements in its application. *See Brenton v. Motion Media,* 125 F.3d 855, 1997 WL 603412, *2–3 (6th Cir.1997); *L.D. Kichler Co. v. Davoil, Inc.,* 192 F.3d 1349, 1352 (Fed.Cir.1999).

A collective membership mark is used to indicate that the user of the mark is a member of a particular organization. Trademark Manual of Examining Procedure ("T.M.E.P.") § 1304.2 (2004). The difference between certification marks and collective membership marks is that certification marks certify characteristics or features of goods or services while collective membership marks indicate membership in an organization. T.M.E.P. § 1306.09. A certification mark certifies not that the user is a member, but that the labor used on the user's goods or services was performed by a member of the organization. *Id.* ARRT registrants do not present their cards to patients to show that their services were performed by a member of the ARRT, and therefore, the ARRT's mark is not used as a certification mark. *See generally id.;* doc. 63, at 4. Rather, registrants of the ARRT present their ARRT cards to current and prospective employers and to individual states to indicate that they belong to and are registered with the ARRT. (Doc. 63, at 3.)

Despite any incongruity in the ARRT's terminology and use of the mark, the Court finds that the ARRT's collective membership mark does in fact properly function as a collective membership mark.[2]

Moreover, Plaintiff has failed to present any evidence of fraud on the part of the ARRT. A party seeking cancellation must prove by clear and convincing evidence that the ARRT knowingly made false, material representations of fact in connection with its trademark application. *L.D. Kichler* at 1351. Plaintiff's allegation that the ARRT necessarily procured its collective membership mark through fraud rests upon the assumption that the ARRT did not notify the PTO that it was not a membership organization or that it lacked members. Beyond the fact that Plaintiff offers no facts in support of this contention, the Court has already determined that the ARRT functions as a membership organization, and thus, Plaintiff's allegation is without merit. Plaintiff has failed to meet her burden of establishing that the ARRT's mark is not a collective membership mark and the ARRT procured the mark through fraud. Thus, Plaintiff has failed to provide facts sufficient to support summary judgment. The Magistrate Judge recommends the motion for summary judgment be denied with respect to the issues of fraudulent procurement of registration and cancellation.

### 2. Federal Trademark Infringement— Section 32(1)(a) of the Lanham Act

Plaintiff next claims that she is entitled to summary judgment on the ARRT's trademark infringement claim under § 32 of the Lanham Act because she did not use the ARRT's mark in commerce within the meaning of the Act, there was no likelihood of confusion, and the ARRT failed to prove injury. (Doc. 58, at 11–19.) Section 32(1)(a) of the Lanham Act states:

> Any person who shall, without the consent of the registrant—
>
> (a) Use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant . . .

15 U.S.C. § 1114(1)(a) (2006).

Plaintiff claims "use in commerce" requires that she use the ARRT's mark in the sale or advertisement of her services, and that she was not selling or advertising her services to the ODH when she presented the altered card, but rather, was attempting to renew her state radiologic license. (Doc. 58, at 12–13.) The Court acknowledges that the Plaintiff's presentation of the altered card and the ARRT's collective membership mark do not fit neatly within analysis of trademark infringement claims for goods or services under the Lanham Act. However, the Plaintiff's presentation of the altered card to the ODH appears to be a use of the ARRT's mark in connection with the distribution of Plaintiff's services. It is undisputed that Plaintiff presented the altered card to the ODH in order to renew her radiologic license and maintain her

---

**2.** The ARRT has repeatedly maintained that it is not a "membership organization" and that its only "members" are the individuals on the Board of Trustees (Doc. 58, PX 6, Kraker dep. 6:15–18.) Upon Plaintiff's filing of a motion for summary judgment, the ARRT produced an affidavit stating that its registrants are the "functional equivalent" of members for the purposes of the Lanham Act. (Doc. 63, Kraker aff., at ¶¶ 1–3.) Admittedly, confusion is created by the ARRT's self-serving use of terms when convenient. Nevertheless, the ARRT's use of the word "members" as a term of art to distinguish between the Board of Trustees and registrants does not affect this analysis.

employment as a radiologic technologist. (Doc. 58, PX 6, Vistein dep. 138:2–146:23.) Current registration with the ARRT is one way in which radiologic technologists can show the ODH that they have met the requirements for renewal of their radiologic technologist license. (Doc. 58, PX 6, Vistein dep. 52:4–14; 89:5–91:4.) Plaintiff's "use" of the ARRT's mark is one that would be expected for this type of collective membership mark and which is connected to the distribution of Plaintiff's services as a radiologic technician. Thus, there is sufficient evidence in the record from which a jury could conclude that Plaintiff's use of the ARRT's mark constituted "use in commerce" within the meaning of the Lanham Act. The Magistrate Judge recommends the motion for summary judgment on this claim be denied.

Plaintiff next claims that, as a matter of law, she did not infringe upon the ARRT's mark because the ODH is not the relevant buyer class and because her presentation of the altered card did not create any likelihood of confusion. (Doc. 58, at 14–17.) These arguments are not well taken. The relevant class for a collective membership mark is different from the relevant buyer class for goods and services. Collective membership marks are used to identify the fact that an individual belongs to the organization and to inform relevant persons of the member's association with the organization. *In re Code Consultants, Inc.,* 60 U.S.P.Q.2d 1699, 1701 (T.T.A.B. 2001). Relevant persons include those persons for whose benefit the membership mark is displayed, and the ODH falls within this class of persons. *Id.* The question is whether relevant persons are likely to believe that the trademark owner's services emanate from or are associated with the collective organization. *Id.* Plaintiff asserts that no confusion occurred because the ODH, upon receipt of the altered card, suspected that it had been altered and contacted the ARRT to confirm its suspi-

cions. (Doc. 58, at 15–16; doc. 64, at 11–13.) The ARRT confirmed that Plaintiff was not currently registered and the ODH did not accept the altered card as evidence that continuing education credits had been met or renew Plaintiff's license. *Id.* In response, the ARRT argues that it is inappropriate on summary judgment for the Court to assume there was no likelihood of confusion. (Doc. 63, at 12–15.) Based upon the facts in this case, the ARRT's argument is well taken.

In determining whether a likelihood of confusion exists, courts consider eight factors set forth in *Frisch's Restaurants v. Elby's Big Boy,* which include: (1) strength of the ARRT's mark; (2) relatedness of the goods and services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) the ARRT's intent in selecting its mark; and (8) the likelihood of expansion of the product lines. 670 F.2d 642, 648 (6th Cir.1982).

The first *Frisch* factor is the strength of the ARRT's mark. Plaintiff claims the ARRT's mark is not strong because it is borderline descriptive and there is no evidence of substantial marketing efforts. (Doc. 64, at 14.) An infringement action may not be defended on the grounds that it is merely descriptive when it has met the requirements of incontestability. *Wynn Oil Co. & Classic Car Wash, Inc. v. Thomas,* 839 F.2d 1183, 1186–87 (6th Cir. 1988). Because the ARRT's mark has met the requirements for incontestability and because it has been registered for five years, it must be considered strong and worthy of full protection.

The second *Frisch* factor is relatedness of the goods. Although the ARRT does not itself perform services in connection with its mark, the services provided by its members are identical to those Plaintiff was attempting to provide and/or maintain

through her infringing use. (Doc. 63, at 13.) Thus, this factor appears to weigh in the ARRT's favor.

The third *Frisch* factor is similarity of the marks. The ARRT card presented by Plaintiff to the ODH was identical to the ARRT's collective membership mark, with one altered number. (Doc. 63, at 13.) This factor also weighs in the ARRT's favor.

The fourth *Frisch* factor is evidence of actual confusion. The Court acknowledges the difficulty in applying this factor to the present case. The ODH's actions suggest that it was initially confused as to the authenticity of the altered card. However, the facts indicate that the ODH was able to dispel any possible confusion. Prior to taking any action on Plaintiff's license renewal application, the ODH contacted the ARRT to confirm the card was altered, and subsequently refused to renew Plaintiff's license. (Doc. 58, at 15–16; doc. 64, at 11–13.)

The fifth *Frisch* factor is marketing channels used, which was not addressed by the parties and is not significant in the present case. The ARRT also does not address the sixth *Frisch* factor, likely degree of purchaser care. Plaintiff argues that the purchasers of the ARRT's services are extremely careful, and include entities who use ARRT registration to determine who may provide health care services to patients. (Doc. 64, at 16–17.) However, if the services are identical and the marks are identical, as they are here, the sophistication of buyers cannot be relied upon to prevent confusion. *McGregor–Doniger, Inc. v. Drizzle, Inc.* 599 F.2d 1126, 1137 (2d Cir.1979). Thus, this factor does not clearly weigh in Plaintiff's favor.

The seventh *Frisch* factor is Plaintiff's intent in selecting the mark. Although Plaintiff claims her intent was entirely innocent, a finding that Plaintiff had good intentions does not preclude a finding that

there was a likelihood of confusion. Plaintiff used its mark in effort to trade upon the goodwill established by the ARRT and even if her actions were innocent, they may have created a likelihood of confusion. The eighth and final *Frisch* factor is the likelihood of expansion of the product lines. This factor was not addressed by the parties and does not appear to be an appropriate inquiry for this case.

Analysis of the *Frisch* factors reveals that the factors do not clearly weigh in favor of either the ARRT or Plaintiff. The ARRT has offered competent evidence raising a genuine issue of material fact as to whether Plaintiff's use of the ARRT's mark created a likelihood of confusion. There is sufficient evidence in the record from which a jury could conclude that Plaintiff's use created a likelihood of confusion and thus, summary judgment in this context is inappropriate. The Magistrate Judge recommends the motion for summary judgment on this claim be denied.

Plaintiff next claims she is entitled to summary judgment on the ARRT's infringement claim because the ARRT has failed to establish its damages. (Doc. 58, at 18.) For trademark infringement under 32(a) of the Lanham Act, the ARRT may recover (1) Plaintiff's profits, (2) damages sustained by the ARRT, and (3) the costs of the action. 15 U.S.C. § 1117 (2006).

The ARRT argues it is entitled to the income earned by Plaintiff while she was unregistered and working at CCF as profits because Plaintiff worked for one year at CCF without being a registered member of the ARRT, despite the undisputed fact that her position required current ARRT registration. (Doc. 63, at 16.) The ARRT asserts that recovery of these profits flows from Plaintiff's unjust enrichment and the need for deterrence. *Id.* The Court concludes that the ARRT's claim for profits is meritless. Although Plaintiff's ARRT reg-

istration lapsed in 2003, the ARRT's claim of trademark infringement is based upon a single incident in which Plaintiff presented an altered ARRT card to the ODH in 2004. There is no evidence that Plaintiff represented herself to CCF as being registered after her registration lapsed in 2003. Thus, income earned by Plaintiff after her registration lapsed, but prior to the alleged infringement, cannot be considered to have been derived from the alleged infringement. After the alleged infringement, Plaintiff received a cease and desist order from the ARRT informing her that she was not registered. (Doc. 58, PX 6, Vistein dep. 46:18–49:14.) Plaintiff informed her employer of that fact and was offered *unpaid* suspension pending resolution of the matter with the ARRT. *Id.* Instead, Plaintiff resigned and accepted a position with Samaritan that did not require ARRT registration.[3] Thus, Plaintiff did not earn any profits after the alleged infringement to which the ARRT would be entitled.

The ARRT next argues that it has suffered actual damage as a result of Plaintiff's use of its mark. (Doc. 63, at 15–16.) The ARRT claims that it suffers damage to the goodwill of its collective membership mark when non-registrants use its mark to misrepresent that they are registered with the ARRT. *Id.* The ARRT claims that this damage is harmful to both the ARRT and its registrants. *Id.* The ARRT also claims that misuse of a collective membership mark inherently causes damage to goodwill because such a mark is invalid if the owner does not exercise control over its use. *Id.* The evidence demonstrates that the ARRT was able to exercise control over the use of its mark because Plaintiff stopped using the mark once the ARRT's issued a cease and desist order. However, in construing the evidence in the light most favorable to the party opposing the motion, the ARRT has alleged sufficient facts from which a jury could conclude that the ARRT was damaged by Plaintiff's use of its mark. The Magistrate Judge recommends summary judgment on this claim be denied. Any damages suffered by the ARRT as a result of Plaintiff's conduct flow directly from the alleged infringing incident and thus begin from the time Plaintiff presented her altered ARRT card to the ODH.

### 3. Federal Trademark Infringement– Section 43(a) of the Lanham Act

■ Plaintiff also asserts that she is entitled to summary judgment on the ARRT's claim of trademark infringement under section 43(a) of the Lanham Act. (Doc. 58, at 17–18.) Section 43(a) of the Lanham Act provides:

> Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or

---

**3.** *Id.* The ARRT also claims that if Plaintiff had not maintained her employment with CCF once she became unregistered, an ARRT registrant could have filled the position. (Doc. 63.) The Court finds that this claims is also meritless. Once Plaintiff resigned, her position was awarded to an existing employee until that employee retired. (Doc. 58, PX 1, Vistein aff., at ¶¶ 5–7.) The position was then awarded to a nuclear medicine technologist, who was not an ARRT registrant. *Id.* The undisputed fact that Plaintiff had met the qualifications for registration but for the payment of fifteen dollars ($15.00) reveals the ARRT's pursuit of this claim to be particularly unreasonable.

commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1) (2006).

Plaintiff claims this count fails for the same reasons as the ARRT's trademark infringement claim under § 32 of the Act—the alleged infringement did not constitute "use in commerce," there was no likelihood of confusion, and the ARRT failed to prove damages. (Doc. 58, at 11–19.) The analysis of "use in commerce" and likelihood of confusion is the same for claims of trademark infringement brought under § 32 or under § 43, except that § 43 does not require "use in commerce" to be connected to the sale, distribution, or advertising of goods or services. Thus, Plaintiff's argument that her presentation of the altered card to the ODH does not constitute "use in commerce" because she was not selling or advertising her services to the ODH when she presented the card is inapplicable to the ARRT's trademark infringement claim under § 43. All of Plaintiff's other arguments relating to "use in commerce," likelihood of confusion, and proof of damages for trademark infringement claims under § 32 apply equally to trademark infringement claims brought under § 43 of the Act.

Accordingly, in construing the evidence in the light most favorable to the party opposing the motion, the ARRT has offered competent evidence raising a genuine issue of material fact as to its counterclaim of trademark infringement under § 43 of the Lanham Act. The Magistrate Judge recommends the motion for summary judgment on this claim be denied. Any damages suffered by the ARRT as a result of Plaintiff's conduct flow directly from the alleged infringing incident and thus begin from the time Plaintiff presented her altered ARRT card to the ODH.

### 4. Common Law Trademark Infringement

Plaintiff sets forth the same arguments with respect to the ARRT's claim of common law trademark infringement as she set forth with respect to the ARRT's claims under §§ 32 and 43 of the Lanham Act. (Doc. 58, at 1 1–19.) Common law trademark infringement claims are analyzed the same as claims brought under the Act. The ARRT has provided competent evidence raising a genuine issue of material fact sufficient to preclude summary judgment on its claim of common law trademark infringement. Accordingly, the Magistrate Judge recommends summary judgment on this claim be denied.

### B. Unfair Competition and Violation of Ohio Deceptive Trade Practices Act

██ Plaintiff next claims that she is entitled to summary judgment on the ARRT's claims of federal unfair competition under § 43(a) of the Lanham Act, common law unfair competition, and violation of the Ohio Deceptive Trade Practices Act, Ohio Revised Code sections 4165.01, *et seq.*, because she did not use the ARRT's mark in commerce, there was no likelihood of confusion, and the ARRT has failed to prove competitive injury and damages.(Doc. 58, at 11–19.) Claims of trademark infringement under the Ohio Deceptive Trade Practices Act and Ohio common law are subject to the same standards as their federal counterparts. *See Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 288 (6th Cir.1997). Ohio and federal courts have noted that "the same analysis applies to

claims under Ohio's statutory common law of unfair competition and the Lanham Act." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 626 n. 2 (6th Cir.2002). Plaintiff's arguments relating to "use in commerce" and confusion apply equally to claims of unfair competition under § 43 the Lanham Act and claims of trademark infringement under §§ 32 and 43 of the Act. Thus, the ARRT has met its burden to offer competent evidence raising a genuine issue of material fact on the issues of "use in commerce" and likelihood of confusion.

■ Plaintiff next argues that the ARRT has failed to establish competitive injury as required by the Lanham Act. (Doc. 58, at 17–18.) Plaintiff claims that unfair competition, as used in § 43 of the Lanham Act, requires the conduct at issue to be competitive, citing *Shonac Corp. v. AMKO Int'l, Inc.*, 763 F.Supp. 919, 926 (S.D.Ohio 1991). (Doc. 58, at 17.) Plaintiff claims there is no evidence of any competitive injury to the ARRT because the alleged act of infringement did not achieve its desired result, and even if it had, it would not have resulted in competitive injury to the ARRT. *Id.* at 17–18.

The *Shonac* case does not actually hold that unfair competition claims under § 43 of the Act require the conduct at issue to be competitive. 763 F.Supp. 919. The *Shonac* court noted that courts are divided on this issue, but it did not have to choose a position because the Plaintiff's claim under § 43 failed as a matter of law. *Id.* at 931–3. The court found *Halicki v. United Artists Communications, Inc.*, 812 F.2d 1213 (9th Cir.1987) to be persuasive and explained that this case requires competition to be present in some discernible way. *Shonac* at 934. The Sixth Circuit has considered the issue of competition as a subcategory of the second *Frisch* factor— relatedness of the goods or services. *See Homeowners Group, Inc. v. Home Mar-*

*keting Specialists, Inc.*, 931 F.2d 1100, 1108 (6th Cir.1991). The court in *Homeowners* explained that there are three categories of cases regarding relatedness of the services: (1) direct competition of services, (2) somewhat related but not competitive services, and (3) totally unrelated services. *Id.* The court explained that "these categories are helpful in gauging how important relatedness may be in the ultimate likelihood of confusion determination." *Id.* And, the question is whether the services are related "so that they are likely to be connected in the mind of a prospective purchaser." *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 159 (9th Cir.1963), cert. denied, 374 U.S. 830, 83 S.Ct. 1870, 10 L.Ed.2d 1053. The ARRT has demonstrated that although the ARRT does not itself perform the same services in connection with its mark, the services provided by its members are identical to those Plaintiff was attempting to provide and/or maintain through her infringing use. (Doc. 63, at 13). Thus, the ARRT has presented competent evidence raising a genuine issue of material fact as to whether prospective purchasers could conclude Plaintiff's services are connected to those of the ARRT. Accordingly, the Magistrate Judge recommends the motion for summary judgment on the ARRT's claims of federal and common law trademark infringement and violation of the Ohio Deceptive Trade Practices Act be denied.

## C. Breach of Contract and Indemnification

The ARRT also brought counterclaims against Plaintiff of breach of contract and indemnification, alleging that Plaintiff breached the "Agreement of Applicants for Renewal of Registration" by bringing suit against the ARRT for violations of due process and intentional tortious interference with contractual and/or business rela-

tionships. (Doc. 21, at 22–23.) The ARRT asserts that under the terms of the Agreement, Plaintiff is required to indemnify the ARRT with respect to its losses, costs, expenses, damages, and judgments, including reasonable attorney's fees, arising from her pursuit of these claims in the present litigation. *Id.*

The ARRT's arguments with respect to its claims of breach of contract and indemnification were fully considered by the Court in its evaluation of the ARRT's Motion for Summary Judgment. For the reasons articulated in the Court's evaluation of the ARRT's motion, the Magistrate Judge recommends the motion for summary judgment on the breach of contract and indemnification claims be granted as to Plaintiff's due process claims, but denied as to Plaintiff's claim of intentional tortious interference with contractual and/or business relationships.

## V. CONCLUSION

The Magistrate Judge recommends the ARRT's Motion for Summary Judgment (doc. 55) be GRANTED as to the due process claims. Plaintiff failed to proffer evidence sufficient to create a genuine issue of material fact as to whether the ARRT is a state actor. The Magistrate Judge recommends the motion for summary judgment on the intentional tortious interference with contractual and/or business relationships claim be GRANTED. Plaintiff has failed to provide competent evidence raising a genuine issue of material fact as to whether the ARRT acted with actual malice sufficient to overcome the ARRT's statutory immunity under Ohio Revised Code §§ 2305.251 and 2305.25. The Magistrate Judge recommends the motion for summary judgment be GRANTED in part and DENIED in part as to the breach of contract and indemnifi-

cation claims. The ARRT is entitled to summary judgment on its breach of contract and indemnification claims against Plaintiff with respect to Plaintiff's pursuit of her due process claims, but not her intentional tortious interference with contractual and/or business relationships claim.

The Magistrate Judge recommends Plaintiff's Motion for Summary Judgment (doc. 58) on the counterclaims of breach of contract and indemnification be GRANTED in part and DENIED in part. Plaintiff is entitled to summary judgment on the counterclaims with respect to Plaintiff's pursuit of her intentional tortious interference with contractual and/or business relationships claim, but not her due process claims. The Magistrate Judge recommends the motion for summary judgment on the counterclaims of federal trademark infringement under §§ 32 and 43 of the Lanham Act, common law trademark infringement, federal unfair competition under § 43 of the Lanham Act, common law unfair competition, and violation of the Ohio Deceptive Trade Practices Act be DENIED. The ARRT carried its burden to offer competent evidence raising a genuine issue of material fact on these counterclaims.

March 14, 2007.